STEWART et al. v. PHELPS et al.

(Supreme Court, Appellate Division, First Department. April 11, 1902.)

1. WILLS—CONSTRUCTION—CREATION OF TRUST—RIGHTS OF LIFE BENEFICIARY.
    Testator's will gave his residuary estate to trustees to pay certain specified sums to his daughter out of the principal, and "the net rents, incomes, issues, and profits" thereof to pay over semiannually to her during her life. Other clauses of the will created others trusts, in which the "net interest and income thereof," or the "net income, issues, and profits thereof," or the "net income, rent, issues, and profits thereof" were to be paid the beneficiaries. *Held*, that the use of the words "issues and profits" in the clause in question did not indicate an intention on the testator's part that anything more than the actual income should be paid to the daughter.

2. SAME—"INCOME"—WHAT CONSTITUTES.
    Increase in the trust estate by reason of the increase in value of certain securities belonging thereto and by reason of the judicious reinvestment of certain other securities belonged to the corpus of the fund, and should not be paid over to the life beneficiary as income.

3. SAME.
    The trustees held stock in a certain corporation, and were given the privilege to subscribe to new stock to be issued for the purpose of redeeming mortgage bonds about to mature. Instead of accepting the privilege themselves, the trustees sold the right to third parties. *Held*, that the profit realized from such sale went to the corpus of the estate, and not to the life beneficiary as income.

Appeal from special term.

Action by John A. Stewart and others against Anna Frances Phelps and others and Helen Louisa Phelps Stokes, impleaded with others, to procure the judicial settlement of the accounts of plaintiffs, as trustees under the will of Isaac N. Phelps, deceased, and for a construction of the will. From the judgment rendered on a referee's report, Helen L. P. Stokes appeals. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, O'BRIEN, and INGRAHAM, JJ.

Cephas Brainerd, for appellant.
Edward W. Sheldon, for respondents.
William Rand, for infant Anson P. S. Hoyt.

INGRAHAM, J. The question upon this appeal arises under the fourteenth clause of the last will and testament of Isaac N. Phelps, deceased. The testator died on the 1st day of August, 1889, and his will, which disposed of a large amount of personal and real property, was admitted to probate by the surrogate in the county of New York. After making provisions for his wife and grandchildren, the testator, by the fourteenth clause of the will, gives to trustees all the rest, residue, and remainder of his estate, real and personal, "to take, receive, hold, collect, manage, invest, and reinvest the same, and the net rents, incomes, issues, and profits thereof to pay over semiannually to my said daughter, Helen Louisa Stokes, until the expiration of one year from the time of my death, and thereupon to pay to my said daughter out of said residuary estate the sum of three hundred thousand dollars, and the net rents, incomes, issues, and profits of said residuary estate, after making said payment of principal therefrom to pay to my said daughter semiannually as aforesaid until the expiration of three years from the time of my death; and thereupon to make a further payment to her out of the principal of said residuary estate of the sum of four hundred thousand dollars, and the net rents, income, issues, and profits of said residuary estate, after making said two payments of principal therefrom, to pay to my said daughter semiannually as aforesaid until the expiration of five years from the time of my death; and thereupon to make a further payment to her out of the principal of said residuary estate of the sum of three hundred thousand dollars, and the net rents, income, issues, and profits of said residuary estate, after making the three above-directed payments of principal therefrom, to pay over to my said daughter semiannually as aforesaid during her natural life." After the death of this daughter one-half of the said sum held in trust was to go to the issue of the said daughter, and the remaining one-half to certain specified beneficiaries. The three specified sums of $300,000, $400,-000, and $300,000 to be paid to the testator's daughter under the fourteenth clause of his will, above referred to, have all been paid to her, leaving $3,714,833.68 of the residuary estate held in trust. At the time of the death of the testator, when the residuary estate was turned over to the trustees, it consisted largely of bonds, stocks, and securities of a like character, and was appraised at what was assumed to have been its fair market value. Subsequently the trustees sold a portion of these securities for reinvestment, realizing a price in excess of that at which the securities were appraised. The increase in the amount realized over and above that at which the property had been appraised seems to be the sum of $399,067.68. The trustees have also from time to time reinvested the estate in other securities, some of which have been sold at a price in excess of that paid, and the amount of such profit upon the sale of the securities purchased by the trustees seems to be the sum of $129,969. It also appears that the executors invested a portion of the estate in purchasing 1,325 shares of the Chicago & Alton Railroad Company, and that company gave to the stockholders the right to subscribe to an increase of the company's capital stock, which

right was sold by the executors for the sum of $4,306.25; and that subsequently, on February 15, 1894, upon a further increase of the stock of the same corporation, the right to subscribe to such increase was sold by the trustees for the sum of $1,937.50; there having been realized upon the sale of such right to subscribe the sum of $6,243.75. It also appears that the trustees received from the executors of the estate 200 shares of the capital stock of the Western Union Telegraph Company, which belonged to the testator prior to his death; that in November, 1892, the directors of the telegraph company increased their capital stock, and declared a dividend of 10 per cent. on the amount of stock before the increase, which represented the net earnings of the company, which, since July, 1881, had been appropriated to the purchase of new lines and other capital purposes, and the trustees received 20 shares of stock of the company as a dividend, and sold that stock for the sum of $1,987.50. The question presented on this appeal is as to whether or not these various sums thus realized by the trustees belong to the appellant, as the beneficiary under the trust, or should be retained by the trustees as principal. The referee held that the life beneficiary was entitled to the dividend upon the stock of the Western Union Telegraph Company; that she was also entitled to the sum of $416.66, the interest on a certain purchase-money certificate of the Union Pacific Railroad Company; but that the remaining increase in the estate was an accretion to the principal of the trust fund, to which the life beneficiary was not entitled. The learned counsel for the appellant bases his argument in opposition to this conclusion of the referee upon the language of the fourteenth clause of the will, which provides that the "rents, income, issues, and profits of said residuary estate," after making the three payments of principal therefrom, should be paid over to the appellant semiannually during her natural life, as indicating an intention of the testator that profits which should arise from the sale of the various investments of his estate by the trustees were to be for the benefit of the life beneficiary, and that this intention is shown by the language used in the other clauses of the will creating trusts, which omitted the words "issues and profits." By the second clause of the will a trust of $200,000 is created, and the "net interest and income thereof" is directed to be paid to the wife of the testator semiannually. By the eleventh clause the sum of $500,000 is given to his executors in trust, and the "net income, issues, and profits thereof" are directed to be paid over semiannually to his wife during the term of her natural life. By the twelfth clause of the will $100,000 is given to his executors in trust "to take, receive, hold, manage, invest, and reinvest the same, and the net income, rents, issues, and profits thereof to collect and accumulate until my grandchild Isaac Newton Phelps Stokes arrives at the age of twenty-one years," and thereupon the sum of $100,000 was to be paid to the said grandchild. By the thirteenth clause of the will the testator gives to his executors a dwelling house in Madison, Conn., occupied by his brother, in trust to hold the same as a house and dwelling for the benefit of his brother during his life; and also bequeaths to his executors the sum of

$10,000, in trust "to take, receive, manage, and invest the same, and the net income, issues, and profits thereof, and also the net rents, issues, and profits of said dwelling house and land, in case my brother elect not to occupy the same, to pay over to my said brother semi-annually during his natural life."

These quotations from the other clauses of the will would seem to indicate that the testator used these phrases interchangeably, adding the word "rents" when there was a devise of real property. We can see nothing in the will which would indicate an intention to give to the life beneficiary more than the annual income received from the trust estate. The broad power of investment given to the trustees by the third codicil to the will cannot be construed as an intention of the testator to authorize his trustees to use this trust fund for the purpose of speculation for the benefit of his daughter. There is nothing to justify a conclusion that the testator intended more than to vest his trustees with the broadest discretion, trusting in their ability and integrity, so that they should not be limited by the legal rules which are imposed upon trustees when no express powers are given as to the character of the investment to be made of the trust fund. This discretion as to the character of the securities in which the trust property was to be invested did not, either expressly or by implication, relate to the question as to what should be income and what principal. It is still an investment of the trust fund that the trustees are required to make. In investments of this character there is always a possibility of loss as well as gain, and it is contrary to that purpose for which a trust fund is created to allow an increase in the value of the securities in which the fund is invested to be paid to the living beneficiary, where no provision is made for such a repayment in the event of any loss which may be sustained by reason of unfortunate investments. It cannot be claimed that, had there been a decrease in the value of the securities turned over by the executors to the trustees as part of this trust estate, the life beneficiary would be liable to make good to the estate a loss; nor could it be claimed that, had the trustees made investments that turned out disastrously to this estate, the life beneficiary would be bound to make good a depreciation in the value of the securities in which the fund had been invested. That the investments of this estate have shown a remarkable increase in value, and that the trustees, by wise and judicious management, have increased the value of the estate by reason of investments that they have made, would not justify the court, without the explicit direction of the testator, in decreeing that such an increase be paid to the living beneficiary, when the future may show a depreciation in the value of other securities in which the trust estate is invested, and which would deplete the trust, which it was evidently the intention of the testator should be preserved for the benefit of his daughter during her life, and for the benefit of her children and the other members of his family after her death. We can find nothing in this will or codicil which would justify us in giving to the language used by the testator in this will any different or broader meaning than would be given to any will giving a general direction to pay the net rents, income, issues, and

profits of a trust fund to a living beneficiary with a remainder over. The learned referee, in his opinion, has very satisfactorily discussed the question as to the meaning to be given to these words, and we have nothing to add to his opinion upon that subject.

There are one or two special classes of investments to which attention should be called. The trustees were holders of stock in the Chicago & Alton Railroad Company, and were given in the years 1892 and 1893 the privilege to subscribe to new stock to be issued for the purpose of redeeming mortgage bonds about to mature. Instead of accepting this privilege, the trustees sold the right, and realized upwards of $6,000, and it is claimed by the life beneficiary as income or profits, and that it should be paid to her as such. There is an apparent plausibility in this claim, but upon consideration we think that this right was not in the nature of a dividend on the stock. If the trustees had subscribed to this stock, they would have used the principal of the trust fund, and would have been entitled to that stock as principal; but, in their discretion, they concluded not to accept that right to subscribe, and, because the stock was of greater value than they would have had to pay the company for it, they realized this amount. It certainly was not income or a dividend on the stock. What the trustees had was a right to subscribe for stock, which, if the right had been exercised, would have resulted in an investment of the trust estate; and the situation was no different than if the trustees had subscribed for the stock, and subsequently sold it at an increase. We do not think that this could be said to be rents, income, issues, or profits. This view is, we think, sustained by In re Kernochan, 104 N. Y. 630, 11 N. E. 149. The case of the Lackawanna Iron & Coal Company stock is within the case of In re Rogers, 161 N. Y. 108, 55 N. E. 393. There the securities that were delivered to the trustees upon the surrendering of their stock were delivered to them as the value of the stock that had been owned by them, and which constituted part of the trust estate. It was not paid as a dividend, interest, or income. A corporation owning capital stock of $100,000, and having a surplus of $1,000,000, is dissolved, and the $1,100,000 is distributed among the stockholders. Certainly the $1,000,000 that was distributed, being the accumulated profits of the company, is not income, but is the payment of the value of the stock represented as its principal, and which gave it its value, whether the stock was sold just before the distribution of the capital stock of the corporation among the stockholders or held until the accumulated capital was distributed. The amount received was the capital of the trust, and not income or profits.

There are other questions presented as to specific investments, but they do not require special discussion. In none of them is the amount sought to be recovered a dividend, or interest, or profit upon an investment. On all corporate stock owned by a trustee, the living beneficiary is entitled to all dividends declared upon that capital stock, but not to the amounts owned or reserved by the company where no dividends have been declared. The increase in the value of the stock caused by the accumulation of the undistributed shares does not become income or profits payable to the living beneficiary

until such dividends have been actually declared by the directors, and thus separated from the capital of the corporation to be distributed as profits to its stockholders.

We think the conclusion arrived at by the referee was correct, and the judgment appealed from should be affirmed, with costs. All concur.