(40 Misc. Rep. 512.)

## In re ROBERTS' WILL.

(Surrogate's Court, Rensselaer County.   April, 1903.)

1. TESTAMENTARY TRUST—COMPENSATION OF TRUSTEE.
      The trustee of a testamentary trust, requiring the payment of income semiannually, is entitled to his commissions semiannually.

2. SAME—INCOME OR PRINCIPAL.
      Money realized by a testamentary trustee from the sale of options, enabling him to purchase additional stock in a corporation, is principal, as between the remaindermen and the life tenant of a trust to collect and receive the income and profits of the fund.

3. SAME.
      Where a trustee of a testamentary trust sells stock representing dividends paid out of corporate earnings, it is income, and profits of the trust fund, and not principal.

4. SAME.
      Proceeds derived from the sale of stocks of a testatrix above their inventory value is principal of the trust fund, and not income.

In the matter of the judicial settlement of the estate of Mary E. Roberts, deceased.   Objections to account.   Sustained.

Peck & Behan, for petitioner.
Long & Maxwell, for cestui que trust.
George J. McDonnell, special guardian.

HEATON, S.   Judicial settlement of the accounts of Charles I. Roberts, as substituted trustee under the will of Mary E. Roberts, deceased, made by such trustee on his application to resign his trust.   Objections to the account by life tenant and infant remaindermen.

The first objection is to an item of $250 paid counsel for the trustee for legal services rendered since 1895, when the last settlement was had.   A voucher is filed for such payment, and proof of the general nature of the services rendered has been made.   No evidence has been offered in opposition.   The estate handled by the trustee is more than $30,000, and consists of two trusts, and is made up of mortgages, stocks, and real estate.   An expenditure of about $30 a year for legal services is not improper, and is allowed.

The second objection is to two items, aggregating $75, paid an accountant in February and May, 1895, immediately following the last accounting.   At that time one of the three trusts then existing terminated, and the fund constituting it was decreed to be distributed, and the accountant was employed to close the old accounts and open the new ones.   A voucher is filed for the payments, and no evidence is given in opposition to them.   The charge seems to be proper and reasonable, and is allowed.

The third objection is to the commissions retained by the trustee upon semiannual payments of income made to the life tenant.   They average about $20.   There is no proof that the amounts deducted are not correct, but it is claimed that the deductions should not have been made semiannually.   The will directs distribution of the

income to be made semiannually. It has been held that where the total income has been paid annually, without deduction for commissions, commissions are thereby waived. Matter of Haight, 51 App. Div. 310, 64 N. Y. Supp. 1029. Where the will contains a direction to pay over income semiannually, the same reasoning would apply, and therefore such retention is confirmed.

The trustee asks direction of the court as to whether three classes of funds received shall be treated as income, and so payable to the life tenant, or as corpus, to be retained for the remaindermen.

The trust in the twenty-first clause of the will of deceased is stated to be "to invest the same and keep the same invested and to collect and receive the income and profits thereof during the life of my son Charles H. Roberts as near as may be semiannually." There is nothing in this will to indicate that the words "income and profits" mean more than interest and income payable upon her investments at fixed periods. She certainly did not intend that her trustee should speculate with her property in an effort to make "profits" for her son, and thereby prejudice his semiannual payments for maintenance and support, which she has provided for with great care. In the light of this plain intention of the testatrix, let us examine the question as to what of this estate is income, and what is principal.

The first of these funds is that derived from the sale of stock rights and options issued in connection with corporate stock owned by deceased, which passed to her trustee. Such rights or options enabled the trustee to purchase additional stock of such corporation on advantageous terms. This right or option had a market value, and he sold it instead of investing new money. Had he availed himself of the right, he would have made a new investment, which would have consisted of new shares of stock purchased at par, but worth more than par, and such new stock would have been corpus. Instead of thus investing, he sold the "right" for cash. The amount realized is not income, but principal, as the stock would have been, had it been purchased and sold. Matter of Kernochan, 104 N. Y. 618, 11 N. E. 149; Stewart v. Phelps, 71 App. Div. 91, 75 N. Y. Supp. 526.

The second of these funds is that derived from the sale of shares of stock, issued as dividend shares, and sold by the trustee. It is admitted by all parties that these dividend shares represented earnings of the corporations. The corporation might have distributed its earnings in money, but instead thereof it issued to its stockholders its own obligations in the form of stock certificates against its accumulated surplus, which were sold by the trustee for cash. Such fund then represents income and profits, and belongs to the cestui que trust, and is not corpus. McLouth v. Hunt, 154 N. Y. 179, 48 N. E. 548, 39 L. R. A. 230; Lowry v. Farmers' Loan & Trust Co., 56 App. Div. 408, 67 N. Y. Supp. 759.

The third fund represents increase for which stocks sold over inventory value. It is not the rule to consider such increase income or profits. But it is said that these stocks were worth more in the market when sold than when inventoried to the trustee, and that the overplus represents income and earnings not distributed by the cor-

poration, which have had the effect of increasing the market price. This may be in part true, but the decisions already cited hold that such earnings are not income until so declared to be such, and distributable to the stockholders. Such increased market value may be due to the high rate of dividend regularly maintained, to good management, to increased opportunity and facility for a profitable business. No one could determine what proportion of the increased market price could be allotted to each of these and many other causes for enhanced market value. There is no provision in the will requiring the life tenant to make the trust estate good for any depreciation in the market value of securities, and he would not be awarded the income accruing from natural causes. Stewart v. Phelps, 71 App. Div. 91, 75 N. Y. Supp. 526.

Decreed accordingly.