(123 App. Div. 117.)

## RICHMOND v. RICHMOND et al.

(Supreme Court, Appellate Division, Fourth Department. January 8, 1908.)

**1. LIFE ESTATES—INCOME—DIVIDENDS.**

A dividend on stock payable in cash out of accumulated surplus and undivided profits belongs to the life tenant, and not the remainderman.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 33, Life Estates, § 35.]

**2. SAME.**

That the value of stock is lessened by a dividend is of no relevancy in determining whether the dividend is to be regarded as income to the life tenant or as capital for the remainderman, but that question is determined by the origin of the dividend.

**3. SAME.**

The privilege of a stockholder to subscribe pro rata for stock of an increased issue does not belong to the life tenant, but the remainderman.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 33, Life Estates, § 35.]

Controversy between Loraine Richmond and John R. H. Richmond and others and the Fidelity Trust Company of Buffalo, as trustee under the will of Moses H. Richmond, deceased, submitted pursuant to Code Civ. Proc. § 1279. Judgment ordered adjudging plaintiff the owner of a cash dividend on stock, that the investment thereof in new stock is a loan thereof by plaintiff to the trustee, that the right to purchase belonged to the trustee, and that the stock so purchased is a part of the corpus of the estate.

Moses Richmond, of the city of Buffalo, died December 30, 1890, leaving a last will and testament, with a codicil thereto, which was admitted to probate by the Surrogate's Court of Erie county in January following. He left him surviving his widow, the plaintiff, but no children or lineal descendants. He left as his only next of kin and sole residuary legatee and devisee a brother, Jewett M. Richmond, who died in 1899, leaving the defendants, his children and only next of kin. The controversy is over the ownership of an extraordinary dividend declared by the Marine National Bank of Buffalo, and also the right to purchase additional stock.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Helen Z. M. Rodgers (Adelbert Moot and William L. Marcy, of counsel), for plaintiff.

Chauncey J. Hamlin (Louis L. Babcock, of counsel), for defendants.

SPRING, J.　The testator by his will, which was executed on the 14th day of February, 1884, bequeathed to his wife $15,000, to be paid in a reasonable time after his decease "without waiting for the lapse of one year," to two nieces of his wife $5,000 each upon attaining the age of 21 years. By article "Fourth" he bequeathed the residue of his property to his executors "in trust, in their discretion to invest, re-invest and keep invested, the personal property, rent, rerent and keep rented, collect rents, insure and keep insured and in repair, any and all real estate, and collect all income from my said estate, and to pay over the same and the whole thereof to my said wife, Loraine Richmond, as follows, viz.:　The sum of one hundred and fifty dollars each month during the year, and at the end of each year to pay over to her the remainder of said income, so long as she, my said wife, Loraine Richmond, shall live, and no longer."　In the same article he provided that, when the legacies to the nieces are paid, "the necessary money to pay the same may be taken from the principal of my estate and the income from the remainder be paid over to my said wife, Loraine, as in this fourth article provided."　He directed that the trust should cease upon the death of his wife, and the rest and residue of his estate should go to his two brothers, Alonzo and Jewett M., and they, with his wife, were nominated executors of his will.　Alonzo Richmond died before the testator, and in July, 1888, he made a codicil to his will.　By this instrument he gave to his wife all his household furniture, books, jewelry, etc., and to each of his two nieces named in the will $10,000 additional on the decease of his wife.　He added $75 to the monthly payment to his wife, making $225.　He made his brother Jewett M. his sole residuary legatee and devisee, whom he named executor with his wife, the plaintiff.　She renounced her right to the issue of letters, and Richmond was appointed alone.　In July, 1895, his account as executor was judicially settled in the Surrogate's Court of Erie county, and a decree entered which directed him to retain as trustee the stock owned by the testator in the Marine Bank.　He resigned as executor in 1897 and the defendant, the Fidelity Trust Company, was appointed by an order of the said Surrogate's Court trustee of said trust and has since administered the trust estate.

The general scheme of the will seems quite plain.　The testator had no children, and obviously his first care was to make adequate provision for his wife.　He gave her the bequest of $15,000 unqualifiedly. He directed his executors "to collect all the income from my estate and to pay over the same and the whole thereof" to his wife in a specific sum each month; and then, to make his purpose more distinct, he added, "and at the end of each year to pay over to her the remainder of said income."　This intention is fortified to some extent by the explicit direction in the will itself that the bequests to the nieces are to be paid from "the principal of my estate, and the income from the re-

mainder" to the wife.   Language could not better disclose the intention of the testator to assure to his widow the payment of whatever income his estate earned during her lifetime.   The personal property left by the testator was of the appraised value of about $80,000.   Included in this were 100 shares of stock in the Marine Bank of Buffalo of the par value of $10,000, but actually worth $35,000 at the time of the death of the testator.   He had owned a part of this stock since 1867, and additions had been made to it from time to time.   In 1890 the capital stock of the bank was $200,000, and the surplus and undivided profits amounted to $483,365.   For 10 years prior to his death there had been dividends annually of 10 per cent. on the stock, and a like dividend was declared for each of the six years thereafter.   In 1897 the dividends were increased to 15 per cent. and added to each year until in 1904 they aggregated 50 per cent., in 1905 60 per cent., and up to July 1, 1906, 40 per cent.   These dividends were paid to the plaintiff as they were received by the trustee.   The bank was incorporated under the national banking law in April, 1902, with the name of the Marine National Bank of Buffalo, and in January, 1903, its capital stock was increased to $230,000.   Pursuant to a resolution of the directors of the bank passed June 30, 1906, a notice was mailed by the president to its stockholders of a special meeting to be held August 15th of that year to vote upon an increase of the capital stock of the bank to $1,-500,000.   The notice contained the following:

"Shareholders desiring to subscribe for such additional stock must subscribe and pay for the same on or before the 20th day of August, 1906, without further notice."

On January 29th preceding the surplus and undivided profits of the bank aggregated $2,165,941.   In anticipation of the proposed increase of its capital stock the directors of the bank on the 18th of July passed the following resolutions:

"Resolved, that a dividend of 552 per cent. on the capital stock of this bank be declared as of August 15th, 1906, payable on and after that date."
"Resolved, that in the matter of the increase of the capital stock of this bank, the president be authorized to sell any unsubscribed stock for the best price obtainable, at not less than 350, when and as authorized at the stockholders' meeting."

At a meeting of the stockholders, convened agreeably to the notice, a resolution was adopted authorizing the increase of the capital stock as recommended by the directors; and this resolution was also passed by the stockholders at such meeting:

"That each shareholder who desires to subscribe for his pro rata share of the new stock must do so and pay for the same on or before August 20th, 1906, and that such new stock as shall not have been subscribed and paid for by the shareholders, under their pro rata privilege, on or before said 20th day of August, 1906, shall be disposed of by the president in such manner as the board of directors may prescribe."

The added capital stock was paid and the requisite certificate of approval given by the Comptroller of the Currency.   On the 15th day of August the amount of the dividend of 552 per cent., or $55,200, was paid by said bank to the defendant trust company as trustee of the trust created by the testator.   The plaintiff claimed this sum was in-

come and belonged to her; while the defendants, as the ultimate bene-
ficiaries, contended that it was a part of the corpus of the estate, and
the legal title vested in them, subject to the payment of any dividends
which might thereafter be declared thereon. All the parties to the
action were in favor of taking advantage of the election afforded to
purchase stock, and an agreement was accordingly entered into by
them directing the trustee to buy the full amount of said stock to which
they were entitled, paying for it with the money derived from said
dividend, and the respective rights of the parties thereto were to be
judicially determined unaffected by said agreement.

The dividend of 552 per cent. was sufficient, avoiding fractional di-
visions of shares, to take care of all the increased stock. There was
left an excess of four shares to be disposed of by the directors. As
already stated, the surplus and undivided profits at the death of the
testator aggregated about $500,000. After the increase had been made,
there was still left in surplus and undivided profits about $900,000.
It is a stipulated fact, also, that the present worth of said increased
stock is upwards of $350 per share. This sum is not its intrinsic com-
putable value, but is due doubtless to the marvelous success which
had been achieved in the management of the affairs of the bank. In
1906 its net earnings were more than 150 per cent. of its capital stock
or about 25 per cent. on a capital of $1,500,000. The growth had not
been spasmodic, but continuous from year to year, and it was therefore
an excellent investment stock. The submission is to settle the disputes
of the parties and two questions are involved: First. Who is entitled
to the cash dividend, the widow or the residuary legatees? Second.
Is the stock purchased a part of the principal of the estate?

It is quite obvious that the dividend declared by the directors of the
bank was paid wholly from the earnings. The capital of the bank was
small in view of the magnitude of its profits. The surplus and un-
divided profits had been accumulating enormously each year. What-
ever they were designated, they were clearly the income which accrued
from the stock. Had these profits been distributed each year among
the stockholders, there would be no question as to the right of the
plaintiff to whatever was apportioned on the stock owned by her hus-
band. After the surplus had accumulated, if the directors had declared
the dividend without increasing the capital stock, her title would be
unquestionable. If the dividend had not been reinvested, the plaintiff
would have been entitled to retain it. The effect upon the capital
stock of the declaration of a dividend is of no importance in determin-
ing the relative legal rights of adverse claimants to it. As was said
in Lowry v. Farmers' Loan & Trust Company, 172 N. Y. 145, 64 N.
E. 798:

"That the value of the shares of stock has been lessened by a dividend is a
fact of no relevancy in determining the question of whether the dividend
is to be regarded as income to the life tenant, or as capital for the remainder-
men. That question will be determined by the origin of the dividend."

When the earnings of a bank remain in a mass undivided, the life
tenant can make no claim to his proportion of them. One who invests
in a bank must accept the management of its affairs by the directors.

If they elect to make small dividends and hoard a large balance for future contingencies, adding to the value of the stock, their determination cannot be interfered with, unless their discretion has been grossly abused. The directorate has control within reasonable bounds at least. When, however, they separate some part from the general fund and distribute it among the stockholders, their authority over the part distributed ceases. They must act before the earnings can be treated as income, or, as anything, except as appurtenant, an incident to the stock itself. When they have once acted in the manner indicated, the part separated from the general mass becomes income. The directors of the Marine National Bank formally declared the dividend. In other words, they made the separation which is alone essential to sever their connection with the part cut from the general mass; and that transfers the part severed to the life tenant. An entirely distinct question is involved in the ownership of the stock purchased. The testator owned 100 shares of stock in this bank when he died. The certificates evidencing his title are held by the defendant trustee, and comprise a part of the corpus of the estate. This principal is to pass to the defendant beneficiaries, and the income accruing from this stock, when separated from the principal to which it is appurtenant, belongs to the life tenant. The right to purchase is an incident to the ownership of the stock. It exists because the stock exists, and the value of the right is dependent upon the value of the stock. The dividend declared by the directors was payable in cash and from the income, and belonged absolutely to the life tenant. It was her property, and the trustee had no control over it. Disconnected from this cash dividend was the right to purchase additional stock, which right as a mere privilege was supposed to be worth nearly $140,000. The widow was not obliged to invest her money in that stock. The trustee had the determining choice in that matter because the right pertained to the stock.

In that condition of affairs, the parties, realizing the wisdom of buying the stock, whatever might be their respective legal rights, entered into the agreement contained in the record. In accordance with its terms the stock was to be purchased with the cash dividend, and, if it was determined that the cash belonged to the plaintiff, the transaction was to be treated as a loan by her to the trustee, and the stock held as security for the loan. If, therefore, the stock purchased belongs to the estate—is a part of the trust funds—the dividends hereafter declared upon it are payable to the widow, and the increment not separated by dividends goes to the residuary beneficiaries upon the death of Mrs. Richmond precisely the same as if no increase had been made in the capital stock. It is unimportant whether the consent of Mrs. Richmond was essential to enable the trustee to purchase this stock, for she gave her consent, and the trustee has acted upon it. Unless there is some legal objection to that course, it would seem equitable, in the first place, that the dividend, which is the transfer of a part of the earnings of the bank, should be paid to the widow; and, second, that the new stock should be purchased by the trustee from the general funds of the estate and the certificates be held by it in common with the other trust property.

I find nothing in the authorities to prevent such a solution of the

difficulty. · This dividend is distinguishable from one payable in stock. In a dividend of that character no cash passes to the life tenant, or to any one, and the dividend is the mere transfer of so much income to stock account. In this instance the widow gets in cash every cent which has been declared as a dividend. She is not entitled to both the cash and the right to acquire additional stock, which is derivable solely from the original stock, and which is not owned by her. The distinction mentioned is well recognized by the authorities. In Matter of Kernochan, 104 N. Y. 618, 11 N. E. 149, the court, in commenting upon the privilege to purchase stock as between the life tenant and the remainderman, say at page 630 of 104 N. Y., and page 154 of 11 N. E.:

"The privilege or option was to subscribe for, and take at par one or more bonds or shares of stock for a certain number of shares of stock already held by the estate. The right to subscribe belonged to the trust estate and accrued upon condition the estate chose to pay for, or purchase the bonds or stock. If the option was accepted, the purchase operated to increase the capital or change its manner of investment, and, if not accepted, the life tenant could neither complain of the choice of the trustees, nor in any way control their discretion. We think its value did not belong to her, and that the decisions of the referee and surrogate in regard thereto were correct."

In McLouth v. Hunt, 154 N. Y. 179, 48 N. E. 548, 39 L. R. A. 230, which involved a controversy between life tenants and remaindermen, the testator owned shares of stock in the Western Union Telegraph Company. The capital stock was increased and a stock dividend issued from the earnings, and it was held that the same belonged to the life tenant. There was no payment in cash, no dividend had been declared in 10 years, and the only way the benefit of the income could inure to the life tenant was by vesting in her the ownership of the stock. In Lowry v. Farmers' Loan & Trust Company, 172 N. Y. 137, 64 N. E. 796, the Pullman Car Company declared a dividend payable from the income in certificates of stock, and it was held to belong to the life tenant. Here, again, it was not a cash dividend, and the life tenant received no money. In these cases it will be noted the dividend was of certificates of stock from the earnings. The distinction in the present case is that here the dividend was in cash, and the life tenant is entitled to it. That dividend is entirely distinct from the right attaching to the stock to acquire new stock, and which the trustee, as the representative of all the parties in interest, may purchase out of the trust funds precisely the same as it may make any other investment. In Robertson ·v. De Brulatour, 188 N. Y. 301, 80 N. E. 938, these authorities were reviewed; and in that case there was a right to subscribe for additional stock, and the court recognized that privilege as an incident to the stock itself, and said at page 315 of 188 N. Y., at page 943 of 80 N. E.:

"The questions as to the new shares of stock purchased by the trustees in the exercise of their right to subscribe therefor, and as to the sums of money received by them from sales of subscription rights upon the stocks given by the will in creation of the trust, were correctly decided in favor of the remaindermen."

The right to subscribe allowed to the holders of stock was not availed of in that case, but was sold by the trustees, and the court held the avails were a part of the trust funds. In the opinion delivered in the

Appellate Division (Robertson v. De Brulatour, 111 App. Div. 882, 98 N. Y. Supp. 15) the court in discussing this phase of the controversy used this language at page 895 of 111 App. Div., page 23 of 98 N. Y. Supp.:

"When the corporation gave to the existing stockholders a right to subscribe to its capital stock at a price fixed, there was nothing in this right of the nature of a dividend or distribution of profits. It was a right which accrued to the owners of the stock as an incident to its ownership. If the owner of the stock had accepted the option and had subscribed to the stock, the stock so subscribed and paid for out of the capital of the trust would be clearly a part of the trust property, and any increase in the value of that stock after its subscription would accrue to the capital of the trust. The trustees, not being in a position to make these subscriptions, sold the right to subscribe, and the proceeds realized from a sale of this right was a part of the capital of the trust."

If the stock had been sold in the open market, the avails would have gone into the surplus and undivided profits, and the life tenant would have received only the benefit therefrom accruing upon the declaration of dividends from time to time. In Stewart v. Phelps, 71 App. Div. 91, 75 N. Y. Supp. 526 (affirmed 173 N. Y. 621, 66 N. E. 1117, on opinion below), the will of Phelps created a trust, the income and profits of which were to be paid to his daughter semiannually. The property consisted largely of stocks and bonds, including stock of the Chicago & Alton Railroad Company. The privilege of subscribing to new stock was given to the stockholders of this company. The trustees under the Phelps will did not accept the privilege, but sold the right in the market, and the life tenant claimed the avails belonged to her, but the court held they were a part of the trust estate. It said at page 97 of 71 App. Div., page 530 of 75 N. Y. Supp.:

"If the trustees had subscribed to this stock, they would have used the principal of the trust fund and would have been entitled to that stock as principal; but, in their discretion, they concluded not to accept that right to subscribe, and, because the stock was of greater value than they would have had to pay the company for it, they realized this amount. It certainly was not income or a dividend on the stock. What the trustees had was a right to subscribe for stock, which, if the right had been exercised, would have resulted in an investment of the trust estate; and the situation was no different than if the trustees had subscribed for the stock and subsequently sold it at an increase. We do not think that this could be said to be rents, income, issues or profits."

The text-books, so far as I have been able to find, give a like construction to this proposition. Cook on Corporations (5th Ed.) § 559; Helliwell on Stock and Stockholders, § 322; 9 Am. & Eng. Ency. of Law (2d Ed.) pp. 717, 718. The principle is clearly stated as follows in Cook on Corporations, § 559:

"The right to subscribe for new shares at par upon an increase of the capital stock, which is an incident of the ownership of the stock, does not belong as a privilege to the life tenant, but such an increment must be treated as capital, and be added to the trust fund for the benefit of the remaindermen. This is equally the rule whether the trustee subscribes for the new stock for the benefit of the trust, or sells the right to subscribe for a valuable consideration. In either event, the increase goes to the corpus. * * * The subsequent income, however, of such increase belongs, during the continuance of the life tenancy, to the life tenant as income. The new shares are part

of the corpus, and the life tenant, being entitled to the income from the corpus, takes the income from the accretions thereto."

The same rule prevails where additions to the plant of a manufacturing corporation have been construed in controversies between the life tenant and the remaindermen. Accumulations often go into the business, and, in fact, make up a part of the working capital, although no change in the nominal stock may be made. Dividends may not be declared at all, but by common consent the business is extended from year to year, and the tangible property, real estate, machinery, and visible assets are added on and all from the profits. Stockholders thus have sanctioned this method, and have recognized the absorptions of the accretions into the actual capital as necessary in the extension of the business. These accumulations are held to represent capital stock and pass to the remaindermen, rather than to the life tenant. Chester v. Buffalo Manufacturing Company, 70 App. Div. 443, 75 N. Y. Supp. 428; Gibbons v. Mahon, 136 U. S. 549, 10 Sup. Ct. 1057, 34 L. Ed. 525; Matter of Rogers, 161 N. Y. 108, 55 N. E. 393. The privilege of subscribing for this stock belonged to the trustee as the holder of the stock in common with the other property of the testator for the purposes of the trust which he has created. When purchased, the dividends which may be declared from time to time are to be paid to the plaintiff, and, upon her death, the stock, with the other property held by the trustee, should be disposed of in accordance with the will of the testator.

Judgment should be ordered adjudging the plaintiff the owner of the cash dividend of $55,200, and that the investment of that sum in the new stock is a loan by the plaintiff to the trustee in accordance with the agreement of the parties, that the right to purchase said stock belonged to the trustee, and the stock so purchased is a part of the principal and corpus of the estate. So ordered. All concur.