WILLIAM T. DAY, trustee, &c.,

*v.*

ANGELINE E. FAULKS et al.

[Decided September 26th, 1911.]

Where, after corporate stock is bequeathed to one for life, a stock
dividend is declared, the new stock representing more than the earnings
after the death of testator, the life tenant is entitled only to a charge
thereon for the proportion thereof representing such earnings.

---

*Mr. Edward A. Day,* for the life tenants.

*Mr. Clark McK. Whittemore,* for the remaindermen.

STEVENS, V. C.

Michael W. Devine died in November, 1895, leaving a last will
by which he gave to his son Michael the shares of his estate to
which two of his sons and daughters were thereunder entitled, in
trust, to pay them the rents, issues, profits and income of their
respective shares during their lives, and after their deaths, to
transfer their respective shares to their issue, or, if there should
be no issue, into the residue.

At the time of his death, testator owned fifty-six shares of the
capital stock of the Singer Manufacturing Company. On De-
cember 19th, 1900, the company declared a stock dividend of two
hundred per cent. on the capital stock theretofore issued, of
which the par value was $10,000,000. It thus increased its
capital stock to $30,000,000. On June 17th, 1910, it made a
further stock dividend of one hundred per cent.; the effect of
which was to increase the capital stock to $60,000,000.

Pursuant to a decree of the orphans court of Union county,
the first stock dividend was apportioned according to the rule of

the *Lang Case, 57 N. J. Eq. (12 Dick.) 326*, fourteen shares and a fraction going to the life tenants as earnings, and the rest to the trust estate as principal. The stock allotted to principal was subsequently sold and does not enter into this inquiry. The question is, to whom do the new fifty-six shares belong—to the life tenants or to the trustee as the representative of the remaindermen?

Although it has been determined, generally, that stock dividends, declared out of profits made since testator's death, go to the life tenants, the precise question here raised has not been examined or passed upon.

In *Ballantine* v. *Young,* just decided by me *(post p. 70)*, I have had under consideration various questions relating to the apportionment of stock dividends and extraordinary cash dividends, and I have there referred to the numerous conflicting decisions on this perplexing subject. Until the court of errors and appeals sees fit to review them and alter the rule heretofore adopted, it is not open to question in this court. I must start out with the assumption that stock dividends, declared after the death of testator, go, in so far as they represent earnings made since his death, to the life tenants.

So far there is no difficulty. But in the case in hand, the question, distinctly raised I think for the first time in this court, is whether, under the name of stock dividends, the life tenants are entitled to anything more than earnings. This question arises under the following circumstances:

At the time of the declaration of the dividend of June, 1910, the company had a surplus of about forty-five millions of dollars. Part of this surplus was represented by their enlarged works and part by cash, merchandise, accounts receivable and other items. They desired to capitalize this to the extent of $30,000,000, and so they issued the new stock which, with the old, made a total capitalization of $60,000,000. The stock of the company, before the new issue, was selling for from $565 to $615 a share, and even more. After it was made, Mr. Clare says that the shares "ranged from $300; then declined to $285, and later sold up as high as $355." The effect of the new issue, in the stock

market, was, therefore, to reduce the value of the $30,000,000 of old stock one-half.

This will be apparent from the following figures:

$$300,000 \text{ shares} \times \$600 = \$180,000,000;$$
$$600,000 \text{ shares} \times \$300 = \$180,000,000.$$

The selling price harmonized with the fact. Whereas before, the whole property was represented by $30,000,000 of stock, it is now represented by $60,000,000; in other words, two shares now represent the same proportionate interest that one formerly did; and the effect of the transaction, if all the stock had been in like case with that in hand, and if the contention of the life tenants be sound, would have been to have transferred to the life tenant not only the $30,000,000 of earnings, but an interest equal to $60,000,000 as well. This $60,000,000 is, nearly all, capital, and so, as the result of the action of the company, the life tenant would have gotten, not only its capitalized earnings, but one-third of its capital as well. Is there any rule of law heretofore declared by this court which compels this unjust result? I know of none. The principle of the *Lang Case* is to preserve the *corpus* of the estate intact, and such is the principle in analogous cases. In *Ballantine* v. *Young* it appeared that the stock of the Central Trust Company had been selling at a large premium. There was a large surplus. The directors declared a cash dividend of two hundred per cent., and, contemporaneously, directed a new issue of stock which the stockholders were at liberty to take at par and pay for with that dividend. The question was, to whom the dividend and the option belonged—to the life tenants or to those in remainder? It was held that the cash dividend belonged to the life tenants (subject to the apportionment prescribed in the *Lang Case*), and that the option to purchase was part of the *corpus,* to be disposed of as such; but that inasmuch as the trustees had devoted the cash dividend to the purchase of the stock, the life tenant was entitled to a charge upon it for his proportion of that dividend. The result of that transaction was, for all practical purposes, like the result of the transaction under consideration; for it was morally certain that the option would be availed of. The numerous cases, therefore (*DeKoven* v. *Alsop, 205 Ill. 309; Davis* v. *Jackson, 152 Mass.*

*58; Greene* v. *Smith, 17 R. I. 28; Hite* v. *Hite, 93 Ky. 257; Eisner's Appeal, 175 Pa. 143; Richmond* v. *Richmond, 108 N. Y. Supp. 298; Brown* v. *Brown, 72 N. J. Eq. (2 Buch.) 667)*, which hold that where the option to purchase has a money value, that value goes to the principal and not to the life tenant, are strong authorities for the proposition that whatever enters into the value of the new stock, besides earnings, is really principal. It would be highly inconsistent to hold that the option to purchase is capital in the one case, and that the value beyond earnings is income in the other. That the policy of the courts of this state is to preserve the principal intact for the benefit of the remaindermen appears from the following cases: *Van Blarcom* v. *Dager, 31 N. J. Eq. (4 Stew.) 783; Willard* v. *Willard, 21 Atl. Rep. 463; Outcalt* v. *Appleby, 36 N. J. Eq. (9 Stew.) 73; Helme* v. *Strater, 52 N. J. Eq. (7 Dick.) 591.*

Some confusion of thought arises from the use of the term "stock dividend." In the very resolution under consideration, it is said that the "directors declare a stock dividend of $30,000,-000." What they really do is to issue certificates whose face value is $30,000,000, and, at the same time, to put, permanently and irrevocably, $30,000,000 into capital. But the certificates thus issued, from the very beginning, represent not the $30,000,-000 capitalized, but, like the old certificates, the entire property of the corporation. If the life tenant gets all the new stock, he gets something that represents, not a share of the earnings only, but of the entire property. To the extent that the stock represents the $30,000,000 of surplus he gets earnings; beyond that he gets principal, except in so far as the stock represents undivided earnings still in the treasury (a comparatively small matter), to which, however, if the company do not distribute them in his lifetime, he is not entitled.

Where the beneficial ownership is in one person only, it makes little difference whether his interest is represented by one share worth $100, or two worth $50, but when persons take in succession—one the income for his life and the other the principal after his death—the court must look into the substance and effect of the transaction unless it is willing to permit a distribution of capital that was never intended by testator. In the *Ballantine*

*Case, post p.* 70, adverted to the fact that the Supreme Court and other tribunals whose decisions carry great weight, have repudiated the Pennsylvania rule giving stock dividends, without reserve, to the life tenant. If this rule is to prevail here, it ought not to be extended beyond its reason. The ground upon which the rule is based is that the life tenant ought to have the earnings when the company makes a disposition of them. Its reason will go no further than to charge the earnings on the new stock. This will at once effectuate the intention of the testator and obviate the injustice, if it be an injustice, of letting capitalized earnings go to the remaindermen.