FREDERIC B. PRATT and Others, as Surviving and Acting Executors, etc., of CHARLES PRATT, Deceased, Plaintiff, *v.* MARY BABBOTT LADD and Others, Appellants, Respondents, Impleaded with HELEN ADELE HERTER, Defendant.

First Department, June 18, 1929.

*William Mason Smith* of counsel [*Van Vorst, Siegel & Smith,* attorneys], for the appellants Mary Babbott Ladd and others, life beneficiaries of one of the trusts.

*Douglas Campbell* of counsel [*Walter H. Merritt,* guardian *ad litem; D. Basil O'Connor,* guardian *ad litem; Roosevelt & O'Connor,* attorneys], for the remaindermen, appellants.

*Ralph W. Crolly* of counsel [*Hugo Kohlman* with him on the brief; *Cullen & Dykman,* attorneys; *A. Henry Mosle,* attorney], for the appellants Brooklyn Trust Company, as committee of Charles M. Pratt, and Harold I. Pratt and another, as executors, etc., of John T. Pratt, deceased.

*Heber Smith* of counsel [*Sidney W. Davidson* with him on the brief; *Carter, Ledyard & Milburn,* attorneys], for the plaintiffs, and for the defendants Frederic B. Pratt and others, respondents.

MARTIN, J. The executors and trustees under the will of Charles Pratt, deceased, instituted this action for a judicial settlement of their accounts as to the eight trusts of his residuary estate, from their last prior accounting period to December 31, 1927.

The objections filed to the accounts concern the application made by the trustees of certain stock dividends. A reference was ordered for the purpose of determining whether the stock dividends should be distributed as income or should be held in the corpus of the trust.

On June 5, 1925, each trust in which the apportionment of stock dividends is questioned, contained 7,500 shares of the stock of the Anglo-American Oil Company, Ltd. On that date the company declared a stock dividend of thirty-three and one-third

per cent, each trust fund being thus increased by 2,500 shares of such stock, actually received by the trustees on June 30, 1926.

The contention of the life beneficiaries is that a greater number of shares should be allocated to income than are credited by the present account. The remaindermen approve the action of the trustees in their division of this stock between principal and income. The trustees maintain a neutral position in the matter, but contend that their account as rendered, with certain minor adjustments not affecting the principles under which they acted, is proper.

It appears that the thirty-three and one-third per cent stock dividend of the Anglo-American Oil Company, Ltd., was declared after the transfer of an item of £495,000 sterling to capital reserve in 1924. This item represents a saving in American exchange realized by the company in that year, when it paid off a loan contracted in 1920. The loan was procured at one rate of exchange and paid off at another, resulting in a saving or extraordinary profit, part of which was transferred to capital reserve.

This profit obviously was not a result of the ordinary conduct of the business for which the company was organized — to market oil. It was occasioned solely by reason of unusual conditions not anticipated by those investing in its stock or by those conducting the company's business affairs.

The question here is whether so much of the stock dividends received by the trustees as represents a profit made by the redemption of the company's loan at an unusually favorable rate of exchange should be considered as income payable to the life beneficiaries or as principal belonging to the remaindermen.

The life beneficiaries contend that this profit from exchange is just as much profit as if it were realized from the sale of oil, and that it should go to the life beneficiaries.

In the report of the directors of the Anglo-American Oil Company, Ltd., for the year 1924 the following statement is made: "The net gain of the exchange transactions in connection with the loan was £596,262–6s–7d, which not being profit in the ordinary sense, has been transferred as to £495,000 to capital reserve, bringing that item to a round £1,000,000, and the balance as to £101,272–6s–7d, to the credit of Employees Annuities Fund. Putting this showing in another way, the above figures mean that the interest on the loan actually cost the company $3\frac{3}{4}\%$ instead of $7\frac{1}{2}\%$ paid to the noteholders."

In the report of that corporation for the year 1925 the following appears: "In the report of a year ago it was stated that the Gold Note Loan of April, 1920 was entirely paid off. This transaction resulted in a substantial profit in exchange."

The referee held that the action of the board in transferring this profit to capital reserve was proper and conclusive on the rights of the life beneficiaries of this trust, and that the stock dividend issued against it consequently belonged to the remaindermen.

In *Bourne* v. *Bourne* (240 N. Y. 172) the court held: " In computing the value of the capital and surplus at the date of the creation of a trust and the same items after the dividend has been distributed, the court must be largely guided by the action of .the directors of the corporation, and if they act in good faith in the exercise of business judgment their decisions may not be questioned. In the absence of evidence their good faith and the results reached by them are assumed to be correct. To alter their conclusion the evidence must show more than that their judgment has proved to be erroneous or that the question was debatable. The burden is upon him who criticizes their action to prove that it resulted from ignorance, mistake or error as to fact or law."

In his dissenting opinion Chief Judge HISCOCK concisely stated the proposition governing this controversy when he said: " We have held that if the principal of the trust is increased by some cause other than addition of current earnings as, for instance, stock of a corporation becoming more valuable, this increment does not constitute earnings which may be claimed by the life tenants."

The saving made by the directors, though the result of good business methods, could not have been made except by reason of favorable conditions. This saving was not an ordinary profit or the result of ordinary earnings. The action of the trustees in assigning to the corpus of the trust a stock dividend which was the result of this saving in exchange is not open to criticism by these life beneficiaries.

Another stock dividend involved in this controversy was declared by the Standard Oil Company of New York which had purchased from time to time, with moneys earned since the inception of the trust, stock of the Magnolia Petroleum Company, and, at the date of said dividend, owned about eighty per cent of the Magnolia Company's stock. At the time of such purchase the company had on hand accumulated earnings, earned since the inception of the trust, sufficient to pay for the Magnolia Company's securities it had purchased.

It is contended by the life beneficiaries that the entire investment in Magnolia stock was made with moneys which the directors could legally have declared as cash dividends; and any such dividends would unquestionably have belonged to them; and we

may concede that, if the directors had declared as dividends the Magnolia stock itself, such dividends would have belonged to the life beneficiaries.

The directors, however, acting within their discretionary power, decided to add to the capital surplus of the corporation the Magnolia stock, both the shares originally purchased and additional shares received as a stock dividend. They then declared a stock dividend against such addition to the capital surplus, permanently capitalizing it.

It is this stock dividend which the life beneficiaries contend represents profits of the corporation earned since the inception of the trust and is income to which they are entitled.

The Standard Oil Company in December, 1925, declared a twenty-five per cent stock dividend. The portion thereof coming to the trustees and representing the increase in value of the Standard Oil Company's holdings in Magnolia Petroleum Company was deemed by the trustees capital increment of the corpus of the trust.

The law appears to be settled that this was the proper method of dealing with that dividend. An increase in the value of securities or other property owned by the corporation declaring a stock dividend does not for present purposes constitute income or earnings of that corporation. (*Bourne* v. *Bourne, supra; Matter of Osborne*, 209 N. Y. 450; *Thayer* v. *Burr*, 201 id. 155.)

The life tenants emphasize the fact that the Magnolia Petroleum stock purchased by the Standard Oil Company was paid for by profits or earnings. The referee in passing on this point said:

" The life tenants recognize the general rule thus laid down, but contend that it is not applicable here because the Magnolia stock was acquired by the Standard Oil Co. ' out of earnings ' received after the creation and setting up of the trusts here involved. The point of this contention is not clear. As to the Standard Oil Co. the additional interest acquired by it in the Magnolia Company, *if any,* represented simply an increase in the value of assets owned by the former. There were no profits, earnings or income as such. Stock dividends representing increased values written up on the books of the company declaring such dividends represents capital increments and not dividends. (*Matter of Osborne, supra,* at p. 476.)

" The result thus reached in reference to the Standard Oil stock dividend is in accord with the general rule heretofore prevailing in this jurisdiction, and with the general policy of this State as declared by the Legislature in 1926 when it enacted section 17a

of the Personal Property Law.* It is likewise in accord with the opinion of the Referee appointed in an action between these same parties, involving these very trusts in which stock dividends of the Standard Oil Co. were involved and was, as here, occasioned by stock dividends received by it from subsidiary corporations, resulting in a ' write-up ' on its books of the value of such holdings."

In *Bourne* v. *Bourne* (*supra*) we find a somewhat similar condition: " The testator created a trust estate, consisting of stock in a corporation and one of its subsidiaries, for the benefit of his children for their lives with remainder to his grandchildren. After his death the corporation distributed to its stockholders shares in the subsidiary corporation and a stock dividend on its own shares. The stock of the subsidiary company has properly been allocated to the capital of the trust estates since it was originally acquired from its accumulated surplus before the death of the testator. As to the extraordinary dividend of the corporation stock, the books of the corporation show that its capital and surplus at the time of the death of the testator was larger than after the stock dividend. On these figures no part of the stock dividend should be allocated to the life tenant."

In *Richmond* v. *Richmond* (123 App. Div. 117; affd., 196 N. Y. 535) the court said: " Accumulations often go into the business, and in fact make up a part of the working capital, although no change in the nominal stock may be made. Dividends may not be declared at all, but by common consent the business is extended from year to year, and the tangible property, real estate, machinery and visible assets are added on, and all from the profits. Stockholders thus have sanctioned this method and have recognized the absorptions of the accretions into the actual capital as necessary in the extension of the business. These accumulations are held to represent capital stock, and pass to the remaindermen rather than to the life tenant."

And in *Lowry* v. *Farmers' Loan & Trust Co.* (172 N. Y. 143): " While the corporate action may not be, necessarily, conclusive upon the court with respect to the question, if it is based upon facts and is not purely arbitrary, it will and should be controlling."

We have reached the conclusion that the action of the trustees in apportioning the stock in question was correct; that the proper amounts thereof were allocated to the respective parties and that their accounts should be sustained.

---

* Laws of 1926, chap. 843, amdg. Pers. Prop. Law, § 17a, as added by Laws of 1922, chap. 452.— [Rep.

The judgment appealed from should, therefore, be affirmed, with costs to all parties appearing separately and filing separate briefs herein payable out of the estate.

DOWLING, P. J., FINCH, MCAVOY and O'MALLEY, JJ., concur.

Judgment affirmed, with costs to all parties appearing separately and filing separate briefs payable out of the estate.