In the Matter of the Estate of LEILA R. MARTIN, Deceased.

Surrogate's Court, New York County, October 1, 1930.

*Weil, Coursen & Manges,* for Florence de Noyon Gray, life tenant.

*Baylis & Sanborn,* for the petitioners.

*Davies, Auerbach & Cornell* [*Alex. J. Field* of counsel], for Domestic and Foreign Missionary Society of the Protestant Episcopal Church in the United States.

*Davis, Polk, Wardwell, Gardiner & Reed,* for Church Pension Fund.

O'BRIEN, S. This is an accounting by the trustees of the estate. A question has arisen between them and the life beneficiary as to the proper allocation of certain proceeds of the sale of subscription rights to which the trustees became entitled by reason of their holding in the trust fund 190 shares of stock of the Home Insurance Company of New York.

In 1928 the Home Insurance Company purchased the stock of the Halifax Fire Insurance Company of Halifax, a Canadian corporation, and offered to its own shareholders the privilege of purchasing such shares at twenty-one dollars a share. While the trustees had no power under the will to purchase or to invest in any further stocks, they made an agreement with a brokerage firm whereby the trustees sold the stock of the Halifax Fire Insurance Company, which they were privileged to purchase, to such brokerage firm at forty-five dollars a share, the latter agreeing to supply the money for that purpose and to pay the trustees the difference between the purchase price and the agreed selling price. This transaction resulted in the trustees receiving the sum of $1,991.64 which they allocated to principal.

During the same year the Home Insurance Company organized a corporation known as the Home Fire Securities Company which offered its stock to the stockholders of the Home Insurance Com-

pany at fifteen dollars a share. The trustees made a similar agreement with the brokerage firm, agreeing to sell to them their allotment of shares at forty-seven dollars and fifty cents a share. The result of this transaction was a gain of $8,105.96 which the trustees also allocated to principal.

The life beneficiary contends that these proceeds should be deemed to be income and be paid to her.

It is conceded that in the ordinary case where a trustee as such holds shares of stock in a company which issues rights to subscribe to a new issue of shares of stock of that company, the proceeds realized upon the sale of such rights belong to capital. (*Matter of Schley*, 202 App. Div. 169; affd., 234 N. Y. 616; *Stewart* v. *Phelps*, 71 App. Div. 91; *U. S. Trust Co.* v. *Heye*, 224 N. Y. 242.) The trustees contend that the same rule applies here.

The beneficiary, however, urges that a different situation exists here because of the fact that the rights to subscribe for shares of stock of the Halifax Fire Insurance Company and the Home Fire Securities Company were not for shares of stock of the company whose certificates the trustees held, but were for shares of stock of other companies. There does not seem to be any authority directly in point in this State. The life beneficiary cites some Pennsylvania cases which held that such profits belong to income. Following the reasoning, however, found in the decisions of our own courts dealing with the disposition of moneys realized from the sale of subscription rights, it seems to me that such proceeds must be held to be capital. In the instant case the amounts received by the trustees upon the sale of the subscription rights were not paid from dividends out of earnings or surplus of the Home Insurance Company, but it so happened that through the actions of the officers of the Home Insurance Company the value of the interests of its stockholders increased. The capital value of the stock of the Home Insurance Company remained the same. The earnings and the profits of that company remained the same. But because of the ownership of stock in the Home Insurance Company that company gave to its stockholders the privilege to become owners of shares of stock in the two other companies. Had not the trustees exercised such privilege they would have been guilty of no violation of the provisions of the will, for under the will they had no power to purchase such stock. Because, however, of the arrangements that they made with the brokers, whereby they had to advance no moneys whatsoever, a profit to the estate resulted.

The right to purchase and sell the stock of the new companies was granted to the stockholders of the Home Insurance Company

merely as an incident to the ownership of the stock of the latter company. In *Sturgis* v. *Roche* (217 App. Div. 573, at p. 580) it was held that " the right to subscribe for additional shares of stock, and the proceeds of such subscription right, have always been regarded as an incident and an attribute pertaining to the stock, and belongs to the principal of the trust fund. ( *U. S. Trust Co.* v. *Heye*, 224 N. Y. 242, 262.)" In the case just cited the facts were somewhat analogous to the situation existing here. In *Stewart* v. *Phelps* (*supra*) the executors invested a portion of the estate in the stock of a railroad company which gave to its stockholders the right to subscribe to new stock to be issued for the purpose of redeeming maturing mortgage bonds. The executors sold such right at a profit. It was held that this was an accretion to the principal of the trust fund to which the life beneficiary was not entitled. The reasoning of that court may well be applied to the present situation. The court there said: " If the trustees had subscribed to this stock, they would have used the principal of the trust fund and would have been entitled to that stock as principal; but, in their discretion, they concluded not to accept that right to subscribe, and because the stock was of greater value than they would have had to pay the company for it, they realized this amount. It certainly was not income or a dividend on the stock. What the trustees had was a right to subscribe for stock, which, if the right had been exercised, would have resulted in an investment of the trust estate; and the situation was no different than if the trustees had subscribed for the stock and subsequently sold it at an increase. We do not think that this could be said to be rents, income, issues or profits." Furthermore, had the result of the transactions of the trustees with the brokerage firm, with respect to the purchase and sale of the rights to subscribe, resulted in losses, it certainly could not have been argued that the life beneficiary would be liable to make up such losses.

I hold, therefore, that the amounts in question were properly accredited to principal. Submit decree settling the account on notice accordingly.