In the Matter of the Judicial Settlement of the Account of Proceedings of the UNITED STATES TRUST COMPANY OF NEW YORK, as Successor Trustee of the Trusts Created by the Will of THERON R. BUTLER, Deceased.

ALICE GREEN HOFFMAN, Appellant; UNITED STATES TRUST COMPANY OF NEW YORK, Respondent.

First Department, January 16, 1920.

**Trust — disposition by testamentary trustee of proceeds of corporate stock, "net income" payable to life beneficiaries — consolidation agreement effecting dissolution of corporation.**

In a proceeding by a trustee under a will for a settlement of its account, and for a determination as to the proper disposition of money received by it for shares of stock of the Lake Shore Railway Company, it appeared that said company, the New York Central Company and certain other companies subsidiary to them, had entered into a consolidation agreement under which stockholders of the Lake Shore Company were to receive five shares of the new company to be formed in exchange for each share of the Lake Shore Company; that the stock in question was not deposited with a protective committee, representing minority stockholders, but the trustee at the request of the life beneficiaries agreed to contribute toward the expenses of the committee provided it should receive for such stock a sum equal to the highest market value thereof within two years next preceding the date of the consolidation agreement; that pending a proceeding under the Ohio statute to determine said value an agreement was made between the protective committee and the Lake Shore Company under which the latter agreed to purchase all stock deposited or controlled by the protective committee, not exceeding a certain number of shares, and the trustee received payment for the shares in question, and the petition under the Ohio statute was withdrawn.

*Held,* that the transaction aforesaid was analogous to the distribution of assets upon the dissolution of a corporation where life beneficiaries are entitled to the aggregate earnings traced as having been accumulated during the period of the trust;

That a certain portion of the amount received by the trustee for the stock was properly credited to income and paid over to the life beneficiaries under the will which declared that " net income " should be payable to them;

That a proper basis is disclosed for a fair and just apportionment;

That there was no intention on the part of the testator to restrict the life beneficiaries to regular, customary and ordinary dividends payable on the Lake Shore stock.

APPEAL by Alice Green Hoffman from a decree of the Surrogate's Court of the county of New York, entered in the office of the clerk of said court on or about the 10th day of April, 1919, overruling the report of a referee in a proceeding brought by the United States Trust Company of New York for the settlement of its account as successor trustee.

*Charles P. Howland* of counsel [*Herbert K. Stockton* with him on the brief], for the appellant.

*W. A. W. Stewart* of counsel [*Stewart & Shearer*, attorneys], for the respondent.

PHILBIN, J.:

Appeal from a decree of the surrogate entered in a proceeding brought by the United States Trust Company, respondent, for a settlement of its account as successor trustee under the will of Theron R. Butler, who died in January, 1884. Objections to the account were filed on behalf of Alice Green Hoffman and Mary Butler Green Hartwell, two of the life beneficiaries. The objections presented the question of the proper disposition of certain money received by the trustee in 1914 for 2,100 shares of the stock of the Lake Shore and Michigan Southern Railway Company (hereinafter referred to as the Lake Shore Company) at the rate of $500 per share and amounting in all to $1,050,000. The trustee credited the entire amount to the capital of the trust estate. The said two life beneficiaries claimed that some portion of the amount so received should have been credited to income and paid over to them and Grace Green Alexander, the remaining life beneficiary. The matter was sent to a referee, who sustained in part the objections so filed and directed the transfer from principal to income of $261,471, that sum being $124.51 out of each $500 received by the trustee. The surrogate overruled the referee and held that the entire amount received by the trustee for the 2,100 shares should be credited to the principal of the trust estate. (*Matter of Butler*, 106 Misc. Rep. 375.) Mrs. Hoffman only has appealed.

On April 29, 1914, an agreement of consolidation was entered into between the Lake Shore Company, the New York Central and Hudson River Railroad Company (hereinafter referred to as the Central Company) and certain other railroad companies

subsidiary to them.   The Central Company then owned about ninety per cent of the stock of the Lake Shore Company, and under the consolidation agreement, stockholders of the latter were to receive five shares of the new company in exchange for each share of the Lake Shore Company.   In May, 1914, a protective committee, of which one Read was chairman, was formed to represent the minority stockholders of the Lake Shore Company.   The stock of the Butler estate was not deposited with the committee, but the trustee, at the request of the life beneficiaries, agreed to pay not to exceed five dollars per share upon its stock toward the expenses of the committee, provided the trustee should receive for such stock a sum equal to the highest market value thereof within two years next preceding the date of the consolidation agreement of April 29, 1914.   The trustee, at the request of counsel for the life beneficiaries, signed on September 14, 1915, and delivered to the protective committee, a notice directed to all the corporations in the consolidation agreement, notifying them of its refusal to convert its stock into the stock of the new corporation, and requiring, pursuant to section 9034 of the General Code of Ohio, under whose laws the Lake Shore Company was incorporated, that the trustee be paid for its stock the highest market value thereof within the two years next preceding the date of the consolidation agreement.   This notice was duly served.   On September 25, 1914, a proceeding was commenced in a probate court of Ohio under said section 9034, to determine the highest market value of the stock within said two-year period and it was alleged that the trustee among others had refused to assent to the terms of the consolidation.   Arbitrators were appointed by an order of October 8, 1914, but on October 16, 1914, an agreement was made between the protective committee and the Lake Shore Company in which the latter agreed to purchase for $500 per share all stock deposited with or controlled by the said Read committee to an amount not exceeding 15,000 shares.   It was further agreed that a stipulation should be made in the Ohio proceeding fixing the value of the Lake Shore stock at $500 per share.   Such stipulation was never filed, however, as the proceeding was dismissed at the request of the Lake Shore Company on October 30, 1914. The trustee was not formally a party to the above agreement

of October 16, 1914, which required the approval of the railroad or public service commission of some of the States before it could become effective.   All of said approvals had not been obtained when the trustee received the payment for the 2,100 shares.

On December 15, 1914, the date fixed by the agreement between the protective committee and the Lake Shore Company for the purchase by the latter of the stock deposited with or controlled by the Read committee, the United States Trust Company, as trustee under the Butler will, delivered to the Central Trust Company the 2,100 shares of Lake Shore stock and received therefor $1,050,000.   On December 23, 1914, the proposed consolidation became effective and the new company was the New York Central Railroad Company.

The stock of the minority stockholders was not in fact purchased by the Lake Shore Company as had been originally proposed, but by a company known as the New York State Realty and Terminal Company (hereinafter referred to as the Terminal Company), all of whose stock was owned by the Central Company.   The Lake Shore Company on December 14, 1914, by order of the Public Service Commission, made an agreement with the Terminal Company transferring to the latter all rights of the former under purchase contracts with non-assenting stockholders.   The certificates of said stock were transferred into the name of the Terminal Company and thereafter exchanged by it for stock of the New York Central Railroad Company.   The stock so received in exchange has since been sold by the Terminal Company to the public and is now outstanding.   No assets of the Lake Shore Company were formally distributed by it to any of its stockholders in connection with or as a result of its consolidation with the Central Company, and no share of its own stock was purchased by the Lake Shore Company in connection with such consolidation.

It is the contention of the appellant that the referee was right; that the transaction involved in this case was analogous to a distribution of assets upon the dissolution of a corporation, where life beneficiaries are entitled to the aggregate of earnings traced as having been accumulated during the period of the trust.   On the other hand, the respondent trustee contends that the transaction involved was nothing more than an actual

and ordinary sale of stock by the trustee; that even if the proceeds of sale are distributable between capital and income, there is no basis in the record for making the apportionment; finally, that it was not the intention of the testator that the life beneficiaries should receive any increase in the value of the assets of the trust estate due to accumulated but undistributed profits. We are of the opinion that the contention of the appellant must be upheld 'and that the referee was right.

In the case of *United States Trust Company* v. *Heye* (224 N. Y. 242, 254) the court by CRANE, J., said: " The fundamental principle involved in these questions is whether there has been a *distribution* or *division* of the earnings, profits or accumulations of the corporation. Until there has been such division, the life tenant is not entitled to any increase in the value of the principal of the trust fund, or the capital and assets of the corporation, shares of which constitute the trust fund. But when there has been a division of the corporate property, no matter what form it may take, that part thereof which consists of accumulated profits or earnings belongs to the life tenant and that which is capital to the remainderman." Judge CRANE quoted the language of Mr. Justice SCOTT in *Matter of Schaefer* (178 App. Div. 117; affd., on opinion below, 222 N. Y. 533) to this effect: " Where the trust fund consists of corporate stock the life tenant will ordinarily be limited to receiving only so much of the profits as the corporation sees fit to distribute in dividends, but when the accumulated profits come into the hands of the trustee in any form or manner the life tenant is entitled to receive them." In other words, if there has been a division there must be an apportionment; and in determining whether there has been a division, we must look at substance and not at mere form. In the *Schaefer* case it was pointed out that a division may take place by way of ordinary dividends, extraordinary dividends, or liquidation. It was held in that case that there was, in effect, a liquidation of one-half of the capital stock of a brewery. What actually happened was that two branches of a family owned all the stock and one branch bought out the other. In carrying through the scheme, the corporation itself bought in half the outstanding stock by means of borrowed money. The stock was not retired, but carried in the treasury and available for resale at any time. Clearly there

was no liquidation in the usually accepted meaning of that term. Yet this court took the view that the substance of the transaction was a part liquidation of the corporation. This court also referred to the rule that in an ordinary sale of stock by a trustee, the profit on the sale belongs to capital and not income, and pointed out that the rule is grounded more in convenience and expediency than in absolute fairness to a life beneficiary.

We have not now before us a case of an ordinary sale by a trustee. On the contrary, we have a liquidation by the Lake Shore Company of the shares of stock held by the Read committee and by the trustee. As already mentioned, section 9034 of the General Code of Ohio provides that the compulsory liquidation should be at the highest market value of the stock within the preceding two years. The trustee served notice that it demanded such amount and the Lake Shore Company filed a petition to have the same ascertained. Subsequently such petition was withdrawn, but only because the amount had been elsewhere determined. The trustee became a party to such condemnation proceedings, in the sense that it deposited its shares with the depositary named in the agreement between the Read committee and the Lake Shore Company and accepted the highest market value as fixed. As a result of the consolidation proceedings the Lake Shore Company for all practical purposes ceased to exist. In that view, the present case is even more favorable to the life beneficiaries than was the *Schaefer* case, for there the corporation continued operation. The money here paid the trustee really came from the Lake Shore Company, because the payment by the Terminal Company was for the account of the Central Company and in turn for the account of the Lake Shore Company. We have, therefore, in the language of the *Heye* case, a distribution or division of the earnings, profits or accumulations of the corporation. And as " each case necessarily is determined by its own facts " (*Heye Case*, p. 255) and as the industry of counsel has disclosed no similar case except *Matter of Schaefer* (*supra*) there is no danger that the present decision can be construed as abrogating the rule, based on expediency alone, that in an ordinary sale of stock the profit made by a trustee goes to capital and not income. The general rule working even-handed justice to both life beneficiary and remainderman should control.

We are also of the opinion that the record discloses a proper basis for a fair and just apportionment. The referee found that the value of the stock at the time the trust was created in 1884 was $109.90 a share, or $230,790, in all; that between February 4, 1884, and December 15, 1914, the Lake Shore Company had accumulated " a free surplus " of $39,482,601.87, and also an " appropriated surplus " of $42,666,913.45. The appropriated surplus consisted of earnings expended from time to time for additions to and betterments of the road of a permanent nature, and for new and improved equipment over and above the then present cost of a new replacement of the structure and equipment displaced. The capital stock of the Lake Shore Company consisted of 500,000 shares of stock, so that on each share there was an accumulation of $78.96 free surplus and $85.33 appropriated surplus. But from 1884 to 1905 a Mrs. Saunders was entitled under the testator's will to one-half the income of the residuary estate. Her potential right to undistributed income ended upon her death in 1905, and capital benefited thereby. The increase of free surplus in that period was $12,167,294.82, or $24.33 per share. Deducting one-half of that from $78.96, we get $66.79, the net free surplus per share. The deduction to be made from appropriated surplus because of the interest of Mrs. Saunders, amounts to $13,807,101.58, or $27.61 a share, leaving a net appropriated surplus of $57.72 per share. The referee consequently directed that $66.79 free surplus, plus $57.72 appropriated surplus, should be transferred from capital to income out of the proceeds of each share of stock disposed of by the trustee. This meant a division of the $1,050,000, received for the 2,100 shares of stock, so as to credit capital with $788,529 and income with $261,471, or an apportionment of the $500 received for each share of stock so as to give capital $375.49 and income $124.51. The corpus of the trust was not restricted to its initial value of $109.90 a share in 1884 but was augmented to $375.49 a share in 1914. While the apportionment as made by the referee was not and could not have been worked out with exactitude, nevertheless the remaindermen were given the benefit of every approximation and cannot complain. The apportionment should be sustained as made.

There was no intention on the part of the testator to restrict

the life beneficiaries to regular, customary and ordinary dividends payable on the Lake Shore stock. Had that been the intention, apt words would have been chosen. Furthermore, the dividends prior to testator's death varied from two to eight per cent, and in 1885, the year following the death, no dividend whatever was paid. Fluctuation was the rule and, therefore, there were no regular and customary dividends as claimed. The will declared that the " net income " should be payable to the life beneficiaries. In the absence of evidence of any intended limitation, it must be presumed, contrary to the contention of the respondent, that it was the intention of the testator that the life beneficiaries should receive any increase in the value of the assets of the trust estate due to accumulated but undistributed profits.

The decree should be reversed and the accounting proceeding remitted to the surrogate for further action in accordance with the views herein expressed, with costs to the appellant payable out of the principal of the trust estate.

CLARKE, P. J., LAUGHLIN, SMITH and MERRELL, JJ., concur.

Decree reversed, with costs to appellant payable out of the principal of the trust estate, and the proceeding remitted to the surrogate for further action in accordance with opinion. Settle order on notice.