# In the Matter of the Estate of Joseph G. Brenner, Deceased.

Surrogate's Court, New York County, October 19, 1938.

PROCEEDING on accounting of executor and for construction of will.

*Arthur J. O'Leary*, for the executors, petitioners.

*Charles G. Coster* [*J. Philip Gillespie* of counsel], for the Mission of the Immaculate Virgin.

*John Godfrey Saxe*, for the Trustees of Columbia University.

*Sheffield & Betts*, for the Trudeau Sanatorium.

*Butler, Wyckoff & Reid*, for the Stuyvesant Square Hospital.

*Feltenstein & Rosenstein*, for Charles M. White, Joseph Whitehead and Jack Zarawitz.

*Gronich & Gronich* [*Samuel Aleyner* of counsel], for Ira Sommer.

*Fallon & Fallon*, for William B. Martin.

*Edgar A. Samuel*, for Herman Schoenman.

*Sullivan, Donovan & Heenehan* [*Edward M. Hanrahan* of counsel], for the New Rochelle Hospital.

*Herbert Stein*, special guardian for Edward Stern and Alfred Stern, infants.

*Thomas M. Kerrigan*, special guardian for Walter H. Leonard and Jean Leonard, infants.

*George Edelman*, for Kate B. Stern, as administratrix, etc., of Barnett Brenner, deceased.

DELEHANTY, S. Deceased by his will first directed payment of his debts and funeral expenses. Then he bequeathed to each of four nephews the sum of $5,000. Next he gave his shares of stock in Galligan & Wohl, Inc., to Peter Galligan provided the latter survived him. Otherwise his stock was to become " a part of [the] residuary estate." Thereafter he gave $5,000 each to Ross Galligan and Rev. William B. Martin. As to these gifts he said that if the

beneficiaries predeceased him the money intended for Ross Galligan was to become part of the residuary estate while the money intended for Rev. William B. Martin was to be given to a named church. " All the rest, residue and remainder " of the estate " of whatsoever kind, nature and description," the deceased gave in equal shares to twelve named charitable organizations.

In a codicil the gift of stock previously made was revoked and deceased gave the following new directions: " I give and bequeath all of my right, title and interest in and to the share of undivided profits and income and unpaid dividends to which I may be entitled as of the date of my death as a stockholder of Brenner, Joseph and White, Inc. (formerly known as Galligan & Wohl, Inc.) to Charles M. White, Joseph Whitehead, Herman Schoenman, Jack Zarawitz and Ira Sommer share and share alike. In the event that the said corporation shall declare a dividend as of a date subsequent to the date of my death out of income earned by the said corporation prior to the date of my death, then in that event, the aforesaid beneficiaries shall be entitled to have the said dividend prorated as of the date of my death * * *. Subject to the foregoing gift and bequest, I direct that all of the stock, which I may own at the time of my death, of the corporation now known as Brenner, Joseph & White, Inc. shall become a part of my residuary estate."

Brenner, Joseph and White, Inc., is a corporation, the capital stock of which consists of 250 shares having a par value of $100 per share. Deceased owned fifty per cent of these shares. No relevant dividend thereon had been declared prior to his death on January 1, 1937. The corporation had set up a surplus of $34,878.02 as of January 1, 1937, the date of deceased's death. On April 15, 1937, it declared a dividend in that amount and paid fifty per cent thereof ($17,439.01) to the executors. Thereafter on May 1, 1937, the stock of deceased was sold by the executors at par, namely, for the sum of $12,500.

The twelve briefs filed by parties in interest present four questions: (1) Could the testator effect a separation between his interest in undeclared profits of the corporation and his interest in the capital of the corporation; (2) assuming that, in general, such a separation was legally possible, did the arrangement here attempted offend any rule of law, notably section 11 of the Personal Property Law; (3) assuming validity of this specific separation, is the gift of the profits a specific, a demonstrative or a general legacy; (4) whether the separation is valid or invalid, is the gift of the stock to the residuary estate a specific legacy and in consequence is the stock available either for commissions to the executors or to enable complete payment of the general legacies which must suffer abatement unless paid in part from the stock values?

Three of the residuary legatees contend (a) that no legacy of the undivided profits of the corporation could be effected by deceased because these profits before being segregated by the declaration of a dividend were the sole property of the corporation, and (b) that if it were conceded that the gift was good so far as subject-matter is concerned it would still fail because it would involve an invalid suspension of the power of absolute ownership of personalty. The argument of these residuary legatees then concludes with the assertion that the right to the dividends, not having been lawfully conferred on the five named individuals, has passed as an incident of the stock which in turn was specifically bequeathed with the result that the residuary legatees are presently authorized to take both the amount which has been realized as a dividend since death and the amount which since that time has been realized as the sales price of the shares.

The father of deceased who would take as distributee such property as might pass in intestacy argues for a different result. His position is that deceased could lawfully discriminate the undivided profits from the capital values represented by the stock, but that the legacy thereof, not vesting within a time legal under the statute, was void. He argues that the failure of the gift for the latter reason leaves the property in question undisposed of, with the result that it is receivable by him in his capacity as distributee.

The argument of the residuary legatees that the profits of a corporation are not property of shareholders prior to the declaration of a dividend and that the right to dividends to be declared in the future passes in a transfer as an incident of title to the stock is correct as a statement of a general principle. (*Matter of Kernochan*, 104 N. Y. 618, 624, 625.) This principle is illustrated in *Hyatt* v. *Allen* (56 N. Y. 553) where by a contract dated August 11, 1871, plaintiff transferred to defendant twenty shares of stock subject to the condition that " all profits and dividends of and upon the stock " up to January 1, 1872, belonged to plaintiff. It was held that a dividend declared April 9, 1872, though it included earnings of the corporation prior to January 1, 1872, belonged wholly to defendant. The court said (p. 556): " It is conceded that the plaintiffs are not entitled to recover anything by force of the word *dividends* contained in the agreement. This word * * * indicates corporate funds * * *. The defendant agreed that *dividends* to the 1st of January, 1872, should be paid to the plaintiffs. As no declaration of a dividend was made until April 9, 1872, the defendant incurred no liability under this part of the agreement."

It should be noted that *by implication* this case holds that a contract of sale of stock providing that future dividends shall be payable to the seller is valid. Thus if the agreement in the cited case had been that the seller was to have had all dividends up to June 1, instead of January 1, 1872, the dividend of April 9, 1872, would have belonged to him. The case is authority, therefore, for the doctrine that though the owner of stock has no legal title in the strictest sense to the corporate earnings prior to their segregation he nevertheless has a sufficient equitable interest to permit of his reservation thereof when negotiating a sale. For this doctrine the *Hyatt* case has been recently cited in *Homestake Oil Co.* v. *Rigler* (39 F. [2d] 40, 41), where the court said, while dealing with a case involving the assignment of *future* dividends: " Dividends in a corporation are property and subject of contract." (See, also, to the same effect 60 A. L. R. 709.) The susceptibility of dividends to treatment by way of assignment is more explicitly held in *Boardman* v. *Lake Shore & Mich. So. R. Co.* (84 N. Y. 157, 177) and in *Jermain* v. *Lake Shore & Mich. So. R. Co.* (91 id. 483, 492, 493). In the latter case it appeared that the railroad had issued shares of " guaranteed ten per cent stock " which were entitled to dividends of ten per cent payable semi-annually out of the net earnings of the corporation. Between 1857 and 1863 no such dividends were paid. The plaintiff in the action in 1870 became the owner of forty shares of the stock. The question was whether he had the right to recover payment of the unpaid guaranteed dividends due for the years 1857 to 1863. It was held that he had such a right since it passed as an incident of ownership of the stock in the absence of any agreement to the contrary between the assignor and assignee. The court said: " A share of stock represents the interest which the shareholder has in the capital *and net earnings of the corporation. The interest is of an abstract nature,* * * *. The corporation represents the whole body of the shareholders and to it, before a dividend has been declared, belong, *in solido, all the assets* * * *. Interest after it becomes due may be assigned to one person, and the principal obligation may be assigned to another, *as the owner of this stock could have assigned these guaranteed dividends to one person and the stock to another;* but until he did so or did some act to separate the guaranteed dividends from the stock, a sale or assignment of the stock carried with it a right to the dividends, as an incident thereto." (Italics supplied.)

A stockholder, holding a certificate of stock, possesses merely a piece of paper which is the symbol of a collection of rights which he has toward certain earnings and capital *all* of which is owned by the corporation. Not only does the corporation own its earnings

before declaration of a dividend but it also owns the capital. A shareholder could no more strip the corporation of his *pro rata* contribution to its *capital* than he could take from it earnings not yet earmarked for shareholders by a declaration of dividend. As the court in the last cited case says, the shareholder's entire " interest is of an abstract nature." His is a once removed ownership of property. It is a " *quasi* ownership in the corporate property." (*Jones* v. *Terre Haute & Richmond R. R. Co.*, 57 N. Y. 196, 205.) Since the shareholder has a collection of rights he may sell one part to one vendee and a different part to another vendee; or he may sell one part and retain another.

The objection that he could not sell, assign or retain future dividends separate from capital values on the ground that so far as the undivided earnings are concerned there is no subject-matter for such a transaction is an objection predicated on the fallacy that as to the corporate capital symbolized by a share of stock the holder has a more direct ownership than he enjoys in respect of undivided profits. The fallacy is illustrated by the complete separation of the legal title to shares of stock from the enjoyment of *powers* in relation thereto. In *Onondaga Trust & Deposit Co.* v. *Price* (87 N. Y. 542, 547, 549), a case here directly in point, deceased gave certain shares of stock to a beneficiary and empowered his executors to collect the dividends. The argument was made that the power to collect dividends imported title to the shares. In rejecting this contention the court said: " Subject to the power given to the executors the property in the shares was vested in her  *  *  *.  *A power to collect dividends on shares of stock in an incorporated company may well be lodged with one person while the title to the stock is in another  *  *  *.*  The executors had the authority given them by the will to collect the dividends for Lilla L. White. This power they might protect, but the shares themselves were hers, and the executors had no power to represent her in disposing of them by transfer." (Italics supplied.)

Now in the present case the legal title to deceased's shares of stock is in either the residuary legatees or the executors contingent upon whether the gift of the shares was or was not a specific legacy — a matter dealt with hereinafter. In either event the holder of the legal title could alienate the shares of stock at will subject only to the interests of the five named persons who were to have the earnings of the corporation up to the date of death of deceased. These five beneficiaries obtained from testator special " beneficial " powers within the meaning of section 136 of the Real Property Law (applicable also to personalty, *Cutting* v. *Cutting*, 86 N. Y.

522, 546) which states that " A general or special power is beneficial, where no person, other than the grantee,. has, by the term of its creation, any interest in its execution."

No special words are required to create a power. Here the legatees are empowered effectively to claim from the first post mortem dividend declared by the corporation that sum which represents the earnings of the corporation up to the date fixed by deceased. It has been shown that such a beneficial power can co-exist with the vesting of complete legal title to the shares in some one other than the donee of the power.

The power is not void because its execution is not measured by lives in being. There is no requirement that the *execution* of a power must take place within a time period measured by such a criterion. The relevant statute is section 178 of the Real Property Law (applicable also to personalty, *Matter of Pilsbury*, 50 Misc. 367; affd., 113 App. Div. 893; affd., 186 N. Y. 545) which provides  hat " The period during which the absolute right of alienation may be suspended, by an instrument in execution of a power, must be computed, not from the date of such instrument, but from the time of the creation of the power."

This language was under examination in *Blanchard* v. *Blanchard* (4 Hun, 287, 290, 291; affd., without opinion, 70 N. Y. 615) where a testator had given his executor a power of sale to be exercised within two years after the lapse of a term of years (a chattel real) given by deceased to his wife and children. Speaking of the statute the court said: " There is not to be found   *   *   *   any restriction respecting the time within which a power must be executed, although it does provide a limitation of the period during which the absolute right of alienation may be suspended by *an instrument in execution of a power   *   *   *.* Before execution, the power is a lien or charge upon the lands, and has no greater effect upon the interests of heirs and devisees than a mortgage made by the testator   *   *   *   the absolute right of alienation of the fee is not affected thereby." And the court significantly added (p. 291) that " The statute does not aim to do anything more than to prevent the inalienability of estates beyond the prescribed limit. It has not sought to limit the duration of a lien or incumbrance thereon."

The five individuals here named as donees of a special beneficial power stand as incumbrancers of the stock of deceased. The holder of the *legal* title to the shares was free to sell his interest and the donees of the power could divest themselves by assignment or otherwise of their interest. Together the holder of the legal title and the donees of the power could at any time have sold the stock free of every incumbrance. Since the " statutory test of what

constitutes a suspension of the power of alienation as to real estate and of absolute ownership as to personal property, * * * (namely) that it occurs only when there are no persons in being by whom an absolute estate in possession can be conveyed" (*Sawyer* v. *Cubby*, 146 N. Y. 192, 196) is not here met, the plan of the testator does not offend the rule against suspension of absolute ownership.

It remains to be determined whether the gift of the stock to the residuary estate was a specific legacy to the twelve residuary legatees. "Whether a legacy shall be considered specific depends upon the intention of the testator or testatrix, to be derived from the language used in the bequest, construed in the light thrown upon it by all the other provisions of the will." (*Davis* v. *Crandall*, 101 N. Y. 311, 319.) Applying this test the court found in *Matter of Security Trust Co.* (221 N. Y. 215), on which the residuary legatees rely, that where a deceased gave his stock in a close corporation to relatives and employees by name and further directed that his debts should be discharged if possible from other assets, the legacies of the stock were specific. It is obvious that the present case differs from that situation. A situation more nearly related to the problem now before the court arose in *Matter of Title Guarantee & Trust Co.* (195 N. Y. 339, 344, 345). There a deceased directed that when certain trusts terminated the principal should "be paid into and form a part of [his] residuary estate hereafter disposed of." He then gave his residuary estate to three charities, two nephews and a brother. Funds were insufficient to pay prior general legacies in full. The question, therefore, was whether the trust principal was available to supply the deficiencies of assets for discharge of the general legacies or whether it should go straight to the residuary legatees thus compelling abatement of the general legacies. The court said:

"It should be assumed that the testator in framing his testamentary scheme contemplated that his property was sufficient in amount to carry it out in all details. It seems perfectly clear that the testator never anticipated that the placing of these amounts in the residuary estate would, in case of insufficient assets, lead to the abatement of general legacies and the partial destruction of his main testamentary scheme.

"We are of the opinion that, considering the whole will, it was the clear intention of the testator to treat the trust fund * * * as a part of the * * * residue * * * after the payment of general legacies in full. There could be no rest, residue and remainder of his estate — no real residuary fund — until that was done."

This language is pertinent to the present case. The general legatees are to be paid in full before anything is available for the residuary legatees. Only thus can the intention of the deceased be given effect.

The statutes and authorities discussed in this opinion require that the four questions formulated by the parties be answered by stating, as to the *first*, that deceased could legally effect a separation between his interest in the undeclared profits of the corporation of which he was a shareholder and his interest in the capital of the said corporation; as to the *second*, that the method he adopted to accomplish such a separation was entirely valid; as to the *third*, that the gift to the beneficiaries of the undivided profits was an effective demonstrative legacy; and as to the *fourth*, that the gift of the capital values involved was a general residuary legacy subject to the prior payment of general pecuniary legacies and constituting a basis for executorial commissions.

The rulings here made require that the objections to the account filed by the Mission of the Immaculate Virgin for the Protection of Homeless and Destitute Children be overruled. All objections filed by Trudeau Sanatorium are likewise overruled except the fourth. This objection complains of the inclusion as a principal charge in the account of an item of $1,353.86 described as having been paid to the Collector of Internal Revenue as an *income* tax. The stipulated facts show that this tax was imposed on the theory that the dividend declared on the shares of Brenner, Joseph & White, Inc., constituted *income to the estate.* The executors had correctly dealt with the receipts on account of the shares (both dividend and sale price) in the capital account. This course of dealing with the dividend was accepted as correct by the State Tax Department. The determination reached by the Collector of Internal Revenue seems plainly erroneous but this court has no power to correct the error. The executors had no choice but to make the payment out of the principal account since there were no other funds with which to pay. On the stipulated facts and on the ruling now made that the dividend passed to the five legatees named in the codicil the executors are directed to reimburse the principal account out of the dividend proceeds for the amount thus deducted erroneously by the Collector of Internal Revenue as a tax on such proceeds. The balance of the dividend only is payable to the legatees. The executors are directed to assign to the legatees all their rights of recovery of the tax so collected. The legatees must pursue their remedies if any in another forum.

In the probate proceeding the father of deceased asserted his right to whatever portion of the estate might have been bequeathed in contravention of section 17 of the Decedent Estate Law. The question was reserved for the accounting. As one-half of this estate after payment of debts amounts to far more than what the charities will receive, nothing accrues to the father of deceased under the section.

Submit, on notice, decree settling the account and construing the will in conformity herewith.