GEORGE B. WILSON et al., as Stockholders of THE RENSSELAER AND SARATOGA RAIL ROAD COMPANY, and RUSSELL HARTRANFT et al., on Behalf of Themselves and Other Stockholders Similarly Situated, Plaintiffs, v. THE RENSSELAER AND SARATOGA RAIL ROAD COMPANY et al., Defendants.

Supreme Court, Special Term, Rensselaer County, January 5, 1945.

* See, also, *People ex rel. Bernoff* v. *Jackson,* 184 Misc. 85.— [REP.

*Nat C. Helman* for plaintiffs.
*Rathbone, Perry, Kelley & Drye* for defendants.

*Francis S. Bensel, Joseph Rosch, Thomas L. Ennis* and *Boykin C. Wright* for The Delaware and Hudson Railroad Corporation and another, petitioners.

*Hinman, Straub & Hughes* for John Paine and others, petitioners.

RUSSELL, J. The plaintiffs have applied to this court for an order *pendente lite* enjoining each of the defendants from doing any acts or signing any documents, the effect of which will be to consummate the plan of merger between the defendant, The Rensselaer and Saratoga Rail Road Company and The Delaware and Hudson Railroad Corporation.

Upon the return of an order to show cause The Delaware and Hudson Company and The Delaware and Hudson Railroad Corporation have applied to this court to intervene and be made parties defendant in this action, and also to be heard in opposition to plaintiffs' motion for an order *pendente lite*.

The petitioners, John Paine *et al.*, seek an order of this court to intervene and be made parties defendant in this action and also to be heard in opposition to plaintiffs' motion for an order *pendente lite*.

It appears that The Delaware and Hudson Company is the owner of 14,502 shares of the stock of The Rensselaer and Saratoga Rail Road Company, which is 14½% of the stock of said company; that John Paine *et al.* are the owners of approximately 1,135 shares of The Rensselaer and Saratoga Rail Road Company.

It further appears that the defendant corporation leased all of its railroad properties and other interests in railroad properties to The Delaware and Hudson Company for the full term of the charter of said defendant corporation. and on or about April 1, 1930, The Delaware and Hudson Company assigned and transferred to The Delaware and Hudson Railroad Corporation all its right, title and interest under the afore-mentioned lease. The Delaware and Hudson Railroad Corporation assumed all liability and obligations as the lessee under said lease. By the terms of said assignment The Delaware and Hudson Company continued to be liable with The Delaware and Hudson Railroad Corporation to pay the rental and perform all other covenants and provisions of said lease.

Subdivision 3 of section 193 of the Civil Practice Act provides as follows: " Where a person not a party to the action has an interest in the subject thereof, or in real property the title to which may in any manner be affected by the judgment,

or in real property for injury to which the complaint demands relief, and makes application to the court to be made a party, it must direct him to be brought in by the proper amendment.''

It, therefore, clearly appears that because of the interest the above petitioners have in this action, they should be allowed to intervene and be made parties.

The application for an injunction *pendente lite* restraining the consummation of the merger rests mainly upon two conditions: first, that the proxies voting 2,076 shares of stock in favor of the merger should have been revoked; and second, that The Delaware and Hudson Company was not entitled to vote 14,502 shares of stock of The Rensselaer and Saratoga Rail Road Company registered in its name.

The plaintiffs further contend that the president of The Rensselaer and Saratoga Rail Road Company is also a director of The Delaware and Hudson Company and financially interested in The Delaware and Hudson Railroad Corporation; that the stockholders of The Rensselaer and Saratoga Rail Road Company were not properly informed of the negotiations preceding the agreement of the merger; that the agreement of the merger was executed by the directors of The Rensselaer and Saratoga Rail Road Company without first submitting the matter for the stockholders' consideration and among other things that the soliciting of proxies was practically bargained away to the control and direction of The Delaware and Hudson Railroad Corporation by the directors of The Rensselaer and Saratoga Rail Road Company.

The complaint in this action does not charge any fraud, collusion or domination.

Considering first the objection relating to the 2,076 shares based upon proxies signed by Cudd & Co., a nominee of the Chase National Bank, and by Kordula & Co. and King & Co. nominees of City Bank Farmers Trust Company, it appears that with respect to the more than 1,850 shares standing in the name of Cudd & Co., there was one proxy signed by Cudd & Co. covering 1,810 shares to be voted in favor of the merger and a subsequently dated proxy for 40 shares to be voted against the merger.

It is the contention of the plaintiffs that the subsequently dated proxy for 40 shares to be voted against the merger revoked the entire 1,810 shares to be voted for the merger, but it seems to be clear that since the 40 shares belonged to one customer and the 1,810 shares to another customer, there was no revocation of the 1,810 shares. Whatever inconsistent language was

printed in the form of the proxy prepared must necessarily have been overcome by the stamped restriction on the proxy to the 40 shares.

Respecting the proxy given by Kordula & Co. and King & Co., it appears that 706 shares were voted for adoption of the agreement of a merger and 400 shares for the rejection of the agreement of merger. The same contention of the plaintiffs arises with respect to the subsequent proxies whereon a limitation clause appears. In the case of Kordula & Co. on a subsequent proxy there is a limitation to 100 shares out of a total holding of 831 shares, and in the case of King & Co. a limitation to 300 shares out of a total of 550 shares appears. The proxies representing the 400 shares for the rejection of the agreement of merger represent entirely separate customer accounts from the 706 shares listed for the adoption of the agreement of merger. Consequently, there could have been no revocation of the 706 shares not only because they were separate customer accounts, but also because of the stamped notice of said proxies which read as follows: "This proxy does not revoke any proxy previously given by the undersigned to vote at said meeting. This proxy shall not be deemed to be revoked by any proxy subsequently given by the undersigned which refers to less than all the shares which the undersigned shall be entitled to vote at such meeting."

The aforesaid shares as voted by the nominees of the two banks were voted pursuant to express instructions of the beneficial owners of the shares. The owners had the express right to have the respective nominees vote according to their direction. (Stock Corporation Law, § 47.)

From an examination of both the papers for and against the motion, I am satisfied that the bank nominees in executing the proxies voted said proxies according to the well-recognized practice and in the manner required by law.

Objection is also raised by the plaintiffs as to the right of The Delaware and Hudson Company to vote its shares of stock for the agreement of merger on the ground, principally, that The Delaware and Hudson Company was instrumental in bringing about the agreement of merger to the detriment and injury of the stockholders of The Rensselaer and Saratoga Rail Road Company.

The plaintiffs claim that there was an interlocking of directors of The Delaware and Hudson Company and The Rensselaer and Saratoga Rail Road Company. It appears, however, that The Delaware and Hudson Company owned 14½% of the stock

of The Rensselaer and Saratoga Rail Road Company. It required a two-thirds stock vote, or 66,667 shares, for the approval of a merger. The total votes counted for the merger were 67,235 and of these The Delaware and Hudson Company voted 14,502 shares of stock. It is well settled that it is a stockholder's privilege to vote his shares upon a measure even though he may have a personal interest therein, separate from other shareholders. (*Gamble* v. *Q. C. W. Co.*, 123 N. Y. 91, 97.) In this case The Delaware and Hudson Company was not a majority stockholder, but even a majority stockholder does not in any sense become a fiduciary for other stockholders by reason of their ownership of stock. He has a right to vote the election of directors and that right does not of itself establish " such control or domination as to make him a fiduciary for other stockholders." (*Cleary* v. *Higley*, 154 Misc. 158, 169.) Ordinarily there exists no trust relation between stockholders themselves, or between the stockholders and the corporation. (*Kavanaugh* v. *Kavanaugh Knitting Co.*, 226 N. Y. 185, 194.)

The undisputed facts as revealed by the answering affidavits discount any theory of interlocking directors, because the directors referred to were not members of the Rensselaer and Saratoga Board at least six months before negotiations were commenced and as far as Mr. Cluett's interest was concerned it appears that as president of The Rensselaer and Saratoga Rail Road Company he was director of and financially interested in The Delaware and Hudson Railroad Corporation for the interests of the stockholders of The Rensselaer and Saratoga Rail Road Company.

I see no reason in view of the above facts why The Delaware and Hudson Company should be deprived of the right to vote its stock.

The affidavits reveal that the stockholders of The Rensselaer and Saratoga Rail Road Company, instead of receiving $8 per share on their stock, have been receiving $4.65 per share under the present Tax Law. In the place of the stock held by the stockholders of The Rensselaer and Saratoga Rail Road Company they are to receive bonds bearing 5½% interest, said percentage being graded under certain terms as appear in the affidavits and briefs. Among said terms the bonds shall bear 4.7% for the first two years and thereafter at the rate of 5½%. The new bonds issued in place of the stock to be redeemable at 107½. The terms of the proposed merger were approved by the Interstate Commerce Commission.

As to other objections raised by the plaintiffs to the merger,

the affidavit of Mr. Cluett shows that reports of said merger appeared in the public press; letters were sent to all stockholders on May 4, 1944; a forty days' notice of the November 8, 1944, stockholders meeting was sent to all stockholders, including a copy of the proposed merger agreement and also a form of the proxy, and several circulars were sent to the stockholders by the plaintiff's committee stating their objections to the proposed merger agreement.

From a careful examination of all the moving and answering papers, it was the evident intent and desire of the owners of the stock, whose votes were cast by proxy, to have their votes cast by the nominees of the respective banks as they were. It is not for this court to decide the probabilities of profitable results arising from the carrying out of the merger proposed. A court of equity will not interfere with the result obtained by the vote of a majority of the stockholders, especially when it appears there was no fraud or facts which would lead one to believe that the proposed acts taken by a majority of the stockholders would be oppressive or unfair to the plaintiffs, or to the best interests of the corporation. (*Gamble* v. *Q. C. W. Co.*, 123 N. Y. 91, 99, *supra*; *Zobel* v. *American Locomotive Co.*, 182 Misc. 323; *Colby* v. *Equitable Trust Co.*, 124 App. Div. 262, 271.)

The motion by petitioners to intervene and be made parties is granted.

The motion for an injunction *pendente lite* is denied.

Submit orders in accordance with this memorandum.