In the Matter of the Accounting of LINCOLN ROCHESTER TRUST COMPANY, as Trustee under the Will of GEORGE D. B. BONBRIGHT, Deceased.

Surrogate's Court, Monroe County, October 13, 1945.

*J. G. Dale* for trustee, petitioner.

*E. Willoughby Middleton* and *A. W. Dunbar* for individual executors of I. H. Bonbright, and for adult beneficiaries.

*C. F. W. Kaelber* for Security Trust Co., as coexecutor of I. H. Bonbright.

*J. C. O'Brien,* special guardian for minor remaindermen.

FEELY, S. Testator willed the " net income " of the residuary estate through the form of a trust to his widow for her life; and upon her death said income was to be divided among their

three children named for a period of time measured by two other lives, with remainder over to the respective children or their descendants. Some of these residuary interests are contingent, and others concern minors.

Testator died owning the majority of the common capital stock of a local industrial corporation, described for convenience in this proceeding as the "Defender" corporation. This block of stock was exchanged by the testamentary trustee, under a controlling direction which the son was empowered by the will to give, for the stock of another industrial corporation described in the papers herein as the "Dupont" corporation, into which the Defender corporation as a going concern merged on May 28, 1945, upon the consent of all parties in interest; and in that association the Defender's business is being continued to even better advantage. Thereupon this court held that the acceptance of the Dupont stock by the accounting trustee was not an investment by the trustee within the meaning of a direction in the will that the trustee "in making investments" for the trust should not invest more than half the estate in the so-called nonlegal stocks. In that decision there was reserved for future determination the matters now being considered.

The trustee in its account credited the Dupont stock to corpus of the trust. No party in interest has objected to this claim of credit. The adult respondents in their answers filed herein, and the special guardian approve this credit, and oppose any apportionment thereof as between income and corpus. This opposition arose out of the fact that the corporate trustee, for further assurance, had prayed in its petition for instructions in this respect, to the end that the decree be made express on these points, rather than depend upon the established implication that the decree would be conclusive not only as to matters which were expressly adjudicated, but also as to those pertinently connected therewith which might, under the issues, have been expressly determined in the proceeding, especially as against the residuary interests that were contingent, or belonged to minors.

Aside from the fact that the last will extends, for the benefit of the widow and descendants, the trust term for the longest period of time permissible under the statute, the will in its other provisions, and in its factual setting, throws little light on the present question. As to either apportionment, or undivided corporate profits, or any like expression other than "net income" as aforesaid, the will is silent; but it does grant to

the executors and to the trustee as such in respect of their handling and voting corporate stock, '' all the powers and privileges they might exercise if they were possessed of such securities in their own right.''

Originally, the trustee received the Defender stock from the executors at the latter's judicial settlement in 1940, under the direction to retain it in the trust until the son directed it to be sold or disposed of. The widow and the son were the executors; and she was a director of the Defender company from September 22, 1942, until her death on March 11, 1943; and she was also the owner of some of its preferred stock. While she was director certain cash dividends were declared in the Defender company, which did not wholly exhaust the profits earned at the time each dividend was declared. After her death the merger of Defender in Dupont occurred on May 28, 1945; whereupon the Dupont stock now in discussion came into the hands of the trustee as a sometime stockholder in the Defender. The latter corporation was then to be dissolved, according to the merger agreement, and its business was to be carried on immediately in Dupont. The trustee then began this proceeding to determine for its guidance in the management of the trust hereafter the legal status of the Dupont stock as an investment, and also the question as to its being apportionable.

As to the latter, the point seems to be whether any court can now unscramble the Defender undeclared dividends of its profits from its capital, and accordingly split up the Dupont stock in the trust, as if the court, on appropriate facts, were dealing with the relative rights of parties in the trust to income and to principal. On the facts in the present case the objections to any such apportionment seem to be well founded. There is a recognized distinction between corporate management and fiduciary procedure. Commercial profits are primarily working capital until they be divided for distribution to the stockholders. They are not necessarily '' income '' either to the beneficiary of a trust holding the corporate stock, nor even to a stockholder as against the corporation. '' Money earned by a corporation is corporate property, and not the separate property of the stockholders, unless and until distributed among them by the corporation. In the absence of any restraining statute, the corporation may treat it and deal with it, either as an increase of its property or as profits of the business. So long as the corporation holds it as a part of the corporate property, it is capital of the corporation, and the interest

therein, represented by each share, is capital and not income of that share, as between the tenant for life and the remainderman, legal or equitable, thereof." (*Rand* v. *Hubbell*, 115 Mass. 461.) So "When the earnings of a bank remain in a mass undivided the life tenant can make no claim to his proportion of them" (*Richmond* v. *Richmond*, 123 App. Div. 117, 122).

The earnings and profits of a corporation remain the property of the corporation until severed from the corporate assets and distributed as dividends, and until then the stockholder has no property interest therein (*Olcott* v. *Estate of Hoffman, Incorporated*, 127 Misc. 399, and cases cited). Mr. Bonbright in his last will did not suggest his interest in undeclared profits be separated from his interest in the capital of any corporation, as was the case in the *Matter of Brenner* (169 Misc. 412, affd. 256 App. Div. 1064). The phrase "issues and profits" is not used anywhere in his will, as it was in *Stewart* v. *Phelps* (71 App. Div. 91, 93). It has also been held that if corporate stock held in trust increases in value through the accumulation of corporate earnings after the beginning of the trust, and no dividends are declared the whole increase belongs to corpus, even upon a sale of the stock (*First Nat. Bank of Tuscaloosa* v. *Hill*, 241 Ala. 606). Undeclared dividends pass with the stock on a sale before declaration of dividends (*Matter of Lander*, 162 Misc. 201). Until dividends have been declared, no question of apportionment can arise.

In the present case any segregation and apportionment would be unusually difficult, because the exchange was not one of stocks equally valuable and quite alike. The Dupont stock appears to have been different and even better than the Defender had been. In going into Dupont in the merger the Defender was not being wound up as in a final liquidation; but was merely extending itself into a combination or association for the sole purpose of improving the carrying on and continuing of its prior business in a setting which bettered its entire financial and commercial position and enhanced the value and prospects of the interests involved. There has not been any depreciation of assets, nor any impairment of capital, nor any division of profits from capital for distribution, or any other purpose. The Defender stock was not being disposed of for cash. Had such been the case there might have been some ground for saying there had been "in effect a partial liquidation" (*Matter of Schaefer*, 178 App. Div. 117, affd. 222 N. Y. 533); or that the merger transaction was "analogous to a distribution of assets upon the dissolution" of a corporation (*Matter of United States Trust Co.*, 190 App. Div. 494, affd. 229 N. Y. 598).

The essential difference between the merger transaction, now being considered, and the mortgage salvage operations under the statutory form of the Otis-Chapal rule, has been pointed out in *Matter of Lander* (162 Misc. 201, *supra*). "Each case necessarily is determined by its own facts." (*United States Trust Co.* v. *Heye,* 224 N. Y. 242, 255.)

The merger was on unanimous consent of all parties in interest, without any reservations as to apportionment or otherwise (*In Re Interborough Consol. Corporation,* 267 F. 914). The Defender stockholders agreed to the delivery of all the assets of their company as a unit. If segregation were now to be made it would have to be first of the Dupont factors from the Defender contribution; and then next of the undeclared profits from the capital of the Defender. No such thing was thought of before the merger; at least it does not appear in the agreement and other exhibits attached to the petition herein, nor was any such reservation referred to on the oral argument. Such a segregation would have been one that could have been effectuated only by the board of directors of the Defender, rather than by a court. Otherwise the courts would be attempting retrospectively to declare dividends that those best qualified and empowered to declare them saw fit not to declare; and great confusion would follow from any such belated reconstruction of the past by a court (*Gibbons* v. *Mahon,* 136 U. S. 549; *Wilson* v. *Rensselaer & Saratoga R. R. Co.,* 184 Misc. 218, 224; *Kahle* v. *Mount Vernon Trust Co.,* 22 N. Y. S. 2d 454, headnotes 6, 7).

The good faith of the Defender directorate has been in no wise questioned; and for six months before her death testator's widow sat in that board with a controlling vote. In such circumstances the courts would not disturb the position taken by the board not to declare more dividends than they actually did (*Roberts* v. *Roberts-Wickes Co.,* 184 N. Y. 257; *Ochs* v. *Maydole Hammer Co.,* 138 Misc. 665; *Weinberger* v. *Semenenko,* 36 N. Y. S. 2d 396, headnote 12). The Defender's corporate charter empowered its directorate to declare dividends as and when they chose; and usually some were declared each year; but neither charter, by-laws, nor resolution of the directors or stockholders, called for an unqualified declaration of dividends regularly at any "fixed periods", as this term is used in our statute on apportionment (Surrogate's Ct. Act, § 204). The widow's estate was not entitled to a portion of the undeclared profits of the corporation, nor of their supposed equivalent as "income" of the trust; for there was not any such

basic period on which to measure the respective portions as of the date of her death. The secondary life estates were not entitled to an apportionment for the reasons aforesaid. No such apportionment was suggested as a possibility until two years after the death of the widow (see *Matter of United States Trust Co.*, 190 App. Div. 494, affd. 229 N. Y. 598), when the merger first occasioned discussion of this point at the instance of the trustee for its own future guidance and protection. Up until the merger had been accomplished all parties in interest treated the assets of Defender as a unit to be exchanged in the capital operation described as a reorganization. The business of Defender was not liquidated, but was continued as a whole in Dupont. The proceeds of this operation did not create any equities calling for a segregation, for the purposes of apportionment, of the profits of the former company from its capital as if they were income and principal in the trust.

In *Wilberding* v. *Miller* (88 Ohio St. 609) the court held that where stock in a corporation was bequeathed to trustees, to hold in trust, with power to sell and reinvest the proceeds, under directions to pay the entire net income to the wife of testator during her life, and the company with the consent of all its stockholders afterward transferred to a new company all of its assets, including a large surplus which it had accumulated in its business and had invested in its plant, machinery and other assets used in the business (much of which was done during the life of testator), each stockholder receiving two shares in the new company for one in the old company, the entire stock received by the trustees, in the new company, belonged to the corpus of the trust fund.

This Ohio ruling is quite in accord with the New York cases herein mentioned.

My conclusion, therefore, is that the Dupont stock received by the trustee for the Defender stock is not now apportionable as between either profit and capital or income and corpus, for the benefit of either the estate of testator's deceased widow, or for their three children named as beneficiaries of the secondary income provisions after her death; but that said Dupont stock was properly credited to corpus of the trust; and is to be handled in the manner outlined in the preliminary decision in this proceeding on the subject of investment.

On notice, enter a decree, settled as to form, in accord with this decision.